**TWENTIETH CENTURY MUSIC CORPORATION and Mary M. Bourne, Plaintiffs,**

**v.**

**George AIKEN, Defendant.**

**Civ. A. No. 72–440.**

United States District Court,
W. D. Pennsylvania.

March 26, 1973.

---

William M. Wycoff, Thorp, Reed & Armstrong, Pittsburgh, Pa., Bernard Korman, Asst. Gen. Counsel, ASCAP, New York City, N. Y., for plaintiffs.

W. E. Frazier, Jr., Pittsburgh, Pa., for defendant.

Thomas N. Dowd, William S. D'Amico, Pierson, Ball & Dowd, Washington, D. C., amici curiae, on behalf of Business Music of Birmingham and others (Muzak).

## OPINION

WEIS, District Judge.

Whether this is a "Jewell" of a case for the plaintiffs or a "Fortnightly" event for the defendant is the question to be resolved in this claim of copyright infringement, an alleged violation of 17 U.S.C. § 1.

The defendant, George Aiken, owns and operates a chain of "fast service" food establishments in the Pittsburgh area, including one in the downtown section. This particular restaurant retails both take-out items and food for consumption on the premises, the latter category accounting for about 40 percent of the total food sold.

There are counters and booths on the premises which accommodate approximately 38 to 40 patrons. Musical background is presented by the use of a single radio set to which are connected 5 separate loudspeakers located in various places in the ceiling in the area used by customers as well as in the part of the premises occupied by the employees.

It is defendant's practice to have the normal programming audible in the restaurant throughout business hours, with no effort being made to exclude any part of the broadcasts. "Commercials", as well as news and musical programs, are heard in the establishment.

On March 11, 1972 the radio was tuned to Station WKJF–FM in Pittsburgh, Pennsylvania, and between 4:00 and 5:00 P.M. two copyrighted musical compositions, "The More I See You" and "Me And My Shadow" were broadcast through the multiple speakers in the ceiling. During that hour there were at least six patrons in Aiken's establishment at all times.

The plaintiff Twentieth Century Music Corporation is the copyright proprietor of the composition, "The More I See You". Plaintiff Mary M. Bourne is the copyright owner of "Me And My Shadow".

Both plaintiffs are members of the American Society of Composers, Authors and Publishers (ASCAP), an unincorporated association, which is authorized to license, on a non-exclusive basis, the right of public performance of the copyrighted musical works in question.

Station WKJF–FM had been licensed to broadcast these two songs and others in the repertory of ASCAP by a written agreement containing a provision which disavowed any grant of authority to the radio station to permit performance for profit by other concerns.[1]

Since 1941, ASCAP has licensed commercial establishments, similar to the defendant's, where the ordinary radio set is supplemented by a number of additional loudspeakers. At the present time it has contractual relationships with 5150 business firms resulting in royalty payments of $246,000.00 annually. As a matter of policy no attempt has been made to require a license where a single standard radio set is used in small commercial establishments.

After the testimony in the case had been concluded, Business Music of Birmingham, Inc., et al. (Muzak franchisers) requested, and were granted permission to file a brief as an *amicus curiae*. The Muzak franchisers sell to business firms "background" music which is transmitted by wire from a single location within a given geographical area. Muzak is licensed by ASCAP at rates negotiated by the parties or if they are unable to agree, at levels set by the United States District Court for the Southern District of New York in accordance with a consent judgment entered on March 14, 1950, amending an Order dated February 26, 1941, in the case of United States v. American Society of Composers, Authors and Publishers, Civil Action No. 13–95. That case had been filed against ASCAP to enjoin violations of the Sherman Antitrust Act and in part provides that ASCAP is to license, on request ". . . a radio broadcasting network, telecasting network, or wired music service (as illustrated by the organization known as 'Muzak') . . . ."

The Muzak organizations compete with FM radio stations for the background music market. A decision adverse to the plaintiff in the case at bar might have an effect on a pending request for reduction of licensing fees which has been filed by Muzak affiliates in the Southern District of New York.

The facts in the case tried before this court are deceptively simple, but the legal problems engendered are difficult and complex. Fundamentally, the decision we are to make requires a choice between two Supreme Court cases which are logically inconsistent and which can co-exist only if confined to the specific technologies involved in each.

This situation comes about because the copyright law, enacted in 1909, did not foresee the capabilities of modern communications techniques and, despite many attempts, Congress has not yet been able to pass legislation satisfactorily accommodating the conflicting interests of those most vitally concerned and the public as well.

The defense relies upon the more recent of the Supreme Court pronouncements, the case of Fortnightly Corp. v. United Artists Television, Inc., 392 U.S. 390, 88 S.Ct. 2084, 20 L.Ed.2d 1176 (1968), and the plaintiffs invoke the earlier decision of Buck v. Jewell-La Salle Realty, 283 U.S. 191, 51 S.Ct. 410, 75 L.Ed. 971 (1931).

*Fortnightly* did not forthrightly overrule *Jewell-La Salle* and therein lies the difficulty.

---

[1]. Paragraph 1 of the contract reads in part: "Nothing herein contained shall be construed as authorizing LICENSEE to grant to others any right to reproduce or perform publicly for profit by any means, method or process whatsoever, any of the musical compositions licensed hereunder or as authorizing any receiver of any radio broadcast to perform publicly or reproduce the same for profit, by any means, method or process whatsoever."

*Jewel-La Salle* reflects the insistence of ASCAP that there was a performance for profit when a hotel owner furnished music to its guest rooms by means of loudspeakers or headphones which were wired to a master radio set in the building. The Supreme Court agreed and held that since complicated electrical instrumentalities were necessary to convert the radio waves into sound, the reception of a radio broadcast amounted to a reproduction of the original program and hence was a "performance".[2]

*Fortnightly* came to the Supreme Court in 1967, some 35 years later, presenting the same practical problem of applying to a new technology the copyright statute of an era totally unfamiliar with a modern communications device, specifically cable television or CATV, as it is called. In that case, the court rejected the reasoning of the earlier Brandeis opinion and decided that at least where CATV was concerned, those systems do not in fact broadcast or rebroadcast and that " . . . like viewers . . . do not perform the programs that they . . . carry".

In commenting upon *Jewell-La Salle*, the majority said in a footnote, *inter alia*, "[That] decision must be understood as limited to its own facts." (392 U.S. page 396, n. 18, 88 S.Ct. page 2088). Later, in discussing the dissent's criticism of failing to follow precedent, the majority referring to the earlier case, said:

"But existing 'business relationships' would hardly be preserved by *extending* a *questionable* 35-year-old deci-

sion that in actual practice has not been applied outside its own factual context, post [392 U.S.], at 405 [88 S.Ct. at 2091] n. 3, so as *retroactively* to impose copyright liability where it has never been acknowledged to exist before. See n. 18, supra." (Page 401, n. 30, 88 S.Ct. page 2090, emphasis supplied).

Even in the context of dealing with the technology involved, the court cautioned—"While we speak in this opinion generally of CATV, we necessarily do so with reference to the facts of this case." (Page 399, n. 25, 88 S.Ct. page 2089)[3]

A casual reading of *Fortnightly* and the application of logic, as generally used in judicial decisions, would seem to require a finding for the defendant in this case, but we are persuaded on deeper consideration that a contrary result should obtain.

We come to this conclusion based on these factors:

1. If the Supreme Court had meant to overrule *Jewell-La Salle*, it would have said so.

2. Existing business relationships do exist as a result of a policy of ASCAP which it has followed since 1941 and, consequently, this is not a retroactive imposition of copyright liability.[4]

3. These existing business relationships are presently being governed, apparently satisfactorily, by the court in the Southern District of New York under the terms of the consent judgment. While copyright and antitrust are dif-

---

2. The Jewell-La Salle case involved an unlicensed radio station but the same result was obtained with a licensed station in the case of Society of European Stage Authors & Composers, Inc. v. New York Hotel Statler Co., 19 F.Supp. 1 (S.D.N.Y. 1937).

3. The Court of Appeals for the 2nd Circuit in the recent decision of Columbia Broadcasting System, Inc. v. Teleprompter Corp., 476 F.2d 338 (1973) held that when CATV distributes signals beyond the range of local antennas, a "performance" is involved.

4. Herman Finkelstein, a witness for ASCAP, disputes the comment in Nimmer (Copyright § 10741, note 204, 1968) that licenses have not been required from commercial establishments such as bars and restaurants which operate radio sets for the amusement of the customers. See the reference to this text in the Fortnightly dissent, page 405, n. 3. We credit the testimony of Mr. Finkelstein that Nimmer is incorrect and that ASCAP has in fact been requiring licenses in many of these situations.

ferent, of course, there is an obviously close connection because copyright is, after all, a form of monopoly.

4. Consistency between the treatment of copyright as it applies to CATV and radio is not necessarily the just or only solution. *Cf.* Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972).

5. Preservation of the status quo until such time as Congress can intelligently deal with the problem in all its dimensions is more apt to accomplish substantial justice than the reversal of a practice which has been in operation for more than 30 years.

We have much less difficulty in concluding that the facts in this case demonstrate a performance for "profit". The background music, according to the defendant, is primarily to enable the employees to perform their work in a more relaxed state of mind and, hence, more efficiently. Pleasure to the customers is considered only a secondary benefit. Either factor would be sufficient to comply with the decisional law in this field and when both are present, it appears to be an *a fortiorari* situation. *See* Herbert v. Shanley Co., 242 U.S. 591, 37 S.Ct. 232, 61 L.Ed. 511 (1917); Chappell & Co. v. Middletown, 334 F.2d 303 (3rd Cir. 1964); Leo Feist, Inc. v. Lew Tendler Tavern, Inc., 267 F.2d 494 (3rd Cir. 1959).

Accordingly, judgment will be entered in favor of the plaintiffs and against the defendant.

### ORDER

And now, to-wit, this 26th day of March, 1973, Judgment is entered against the defendant and in favor of plaintiff, Twentieth Century Music Corporation, in the sum of Two Hundred and Fifty Dollars ($250.00).

Judgment is further entered against the defendant and in favor of plaintiff, Mary M. Bourne, in the sum of Two Hundred and Fifty Dollars ($250.00).

It is further ordered that defendant shall pay the costs incurred in this action; However, by reason of the relative merits and complexities of the legal issues involved in the controversy, such costs shall not include counsel fees.