760 F.Supp. 767 (1991)
EDISON BROTHERS STORES, INC., Plaintiff,
v.
BROADCAST MUSIC, INC., Defendant.
No. 90-328C(1).
United States District Court, E.D. Missouri, E.D.
April 3, 1991.
*768 Robert Haar, William Kohlburn, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, Mo., Michael A. Kahn, Katharine Livingston, J. Daniel Sharp, Folger & Levin, San Francisco, Cal., for plaintiff.
George Luberda, Caruthers, Herzog, Crebs & McGhee, St. Louis, Mo., Jonathan Zavin, Scott Martin, Richards & O'Neil, New York City, for defendant.

MEMORANDUM
NANGLE, District Judge.

A. BACKGROUND
Plaintiff brought this action for declaratory judgment, requesting the Court to declare that the employee radio policy of Edison Brothers Stores, Inc. ("Edison") falls within the "homestyle exception" of the Copyright Law of 1976, 17 U.S.C. § 110(5), and that Edison is under no obligation to pay licensing fees for the playing of music on consumer radio equipment by employees in its stores. Defendant Broadcast Music, Inc. ("BMI") asserts that Edison employees' radio use is not exempted, and that Edison should pay BMI a license fee for this alleged commercial and public performance broadcast of copyrighted musical recordings held by BMI as assignee of the public performance rights of the composers and publishers of the music.
This matter is before the Court on the parties' cross-motions for summary judgment, and their repeated representations that the matter can and should be disposed of on summary judgment. The essential facts of this case are not in dispute. Edison owns and operates approximately 2,500 shops selling shoes and apparel nationwide. These retail stores range in size from approximately 850 to 1200 square feet of selling space. Edison provides each store with one radio receiver unit and two box speakers, and prohibits its employees from playing tapes, cassettes, compact discs or anything else besides the radio in the store. BMI challenges this practice as a broadcast to the public of the radio programming, *769 and since many of the songs heard on the radio are protected by BMI as assignee of the broadcast rights, then BMI wants Edison to buy a license to play its songs on the radio in Edison's stores.

B. SUMMARY JUDGMENT
In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R. Civ.P. 56(e). See also 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2739 (1983).
Recently, the Supreme Court noted that: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to `secure the just, speedy and inexpensive determination of every action'." Celotex, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). Thus, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. at 1355. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial'." Id. at 587, 106 S.Ct. at 1356. The Eighth Circuit has acknowledged that the "trilogy of recent Supreme Court opinions" demonstrates that the courts should be "more hospitable to summary judgments than in the past" and that a motion for summary judgment "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc., 838 F.2d 268, 273 (8th Cir.1988).

C. DISCUSSION
The Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. ("Copyright Act"), gives a copyright holder certain exclusive rights in his or her copyrighted works, including the exclusive rights of public performance of musical works. See 17 U.S.C. § 106(4). However, there is an exception to the above rule found in 17 U.S.C. § 110(5), involving the reception and public playing of music broadcast over the airwaves, on simple equipment and in such a manner that duplicates the reception and playing of the radio by a private person in his own home (the "homestyle exception"). Title 17, section 110 states in pertinent part:
Notwithstanding the provisions of section 106 [of this title], the following are not infringements of copyright:
* * * * * *
(5) communication of a transmission embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of a kind commonly used in private homes, unless 
(A) a direct charge is made to see or hear the transmission; or
(B) the transmission thus received is further transmitted to the public; * * *
Edison has attempted to comply with the above requirements by imposing and enforcing in each of its stores the following radio usage policy ("Radio Policy"):
1. Only simple, low grade radio-only receivers are to be used.
2. Only two speakers may be attached to a radio receiver.
3. The speakers must be placed within 15 feet of the receiver.

*770 4. Speakers that are built into the walls or ceilings must not be used. Only portable box speakers are allowed.
5. [Edison will a]dvise each store manager that they are not to use tapes, cassettes, or any other type of recording equipment in their stores. They are to play the radio only.
See Plaintiff's Motion for Summary Judgment, Exhibits 38, 17-85; Young Aff. at ¶¶ 5-10. Edison has submitted voluminous exhibits and affidavits to demonstrate its rigorous compliance with the above Radio Policy in each of its stores.
The homestyle exception was included in the 1976 Copyright Act specifically in response to the Supreme Court's decision in Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975). Aiken held that the owner of a small fried-chicken restaurant was not "performing" copyrighted works when he played a conventional radio through four ceiling-mounted speakers for the benefit of customers and employees. See 422 U.S. at 162-164, 95 S.Ct. at 2047-48. According to the legislative history of the 1976 Copyright Act, an act such as Aiken's would be considered a performance. See House Report No. 94-1476, 94th Cong. 2d Sess., at 87; reprinted in 1976 U.S.Code Cong. & Admin.News 5659, 5701 ("H.R. 94-1476"). To decide whether an infringement had occurred, the critical question instead would be the type of equipment used by the putative infringer. National Football League v. McBee & Bruno's, Inc., 792 F.2d 726, 730 (8th Cir.1986).
The drafters of Section 110(5) of the Copyright Act called "the use of a home receiver with four ordinary loudspeakers ... the outer limit of the exemption," H.R. 94-1476, supra at 5701, and went on to state that:
the clause would exempt small commercial establishments whose proprietors merely bring onto their premises standard radio or television equipment and turn it on for their customers' enjoyment, but it would impose liability where the proprietor has a commercial `sound system' installed or converts a standard home receiving apparatus (by augmenting it with sophisticated or extensive amplification equipment) into the equivalent of a commercial sound system.
Id.; see National Football League, supra, 792 F.2d at 730-31.

1. Elements of Section 110(5)

The elements of Section 110(5) that Edison must satisfy are (1) that it use a single receiving apparatus in its stores; (2) that the receiving apparatus is of a kind commonly used in private homes; and (3) that Edison does not further transmit or broadcast to the public the transmission it receives (the "second transmission" restriction). The Court finds that Edison has satisfied each of these elements through its Radio Policy.
The first element is satisfied in that each store that Edison owns and operates only uses one radio receiver at a time. The Court finds no merit in BMI's argument that the Court should focus on the number of stores, and thereby the total number of radios that Edison operates nationwide, rather than on the number of radios per store. The homestyle exception makes no sense unless it is applied on a store-by-store basis, to see whether each store is operating one set of simple radio equipment without extensive augmentation. It does not matter whether the owner repeats this compliance process for two or more stores.
BMI's argument would mean that any chain of two or more stores owned and operated by the same person would be disqualified from the Section 110(5) exception. The Aiken case, which carved out this homestyle exception, involved a defendant, Mr. Aiken, who owned and operated more than one place of business, see Twentieth Century Music Corp. v. Aiken, 356 F.Supp. 271, 272 (W.D.Pa.1973), and no court interpreting Section 110(5) has ever taken the position that operating two or more stores disqualifies a person from the exception. The Court finds that it is not appropriate to focus on the number of stores involved, but rather on whether each store duplicates the requirements of the homestyle exception. *771 Accord, Broadcast Music, Inc. v. Claire's Boutiques, Inc., 754 F.Supp. 1324 (N.D.Ill. 1990).
Edison also satisfies the second factor, in that its Radio Policy requires the use of simple, low grade radio-only receivers, only two speakers may be attached to a radio receiver, and only portable box speakers are allowed. Edison's strict enforcement of its Radio Policy ensures that the abuses reported in other cases do not occur in its stores; abuses such as where high powered equipment, or equipment attached to large numbers of speakers, or equipment augmented by voice-over intercom systems and the like were passed off as "homestyle" radio systems. See, e.g., Plaintiff's Reply and Opposition Memorandum, Appendix A; National Football League, supra, 792 F.2d at 731 (citing cases).
The equipment Edison employs is of a type generally sold for private consumer use, and the equipment is placed or installed in the stores in a manner duplicating its placement in a common household; i.e. the radio-only receiver unit is placed on or underneath a shelf, two normal box speakers are attached with ordinary speaker wire, and the wire is generally exposed to view, the speakers are placed on a shelf or hung on a wall near to the receiver, and speakers that are built into the walls or ceilings may not be used. In this day of digital-audio-computerized-noise reduced technology, most modern stereo buffs would no doubt be aghast at the low-tech, low-performance and low cost of Edison's store equipment, but it appears that Edison is attempting to focus on simplicity, and the spirit of the exception when it was first promulgated in 1976.
Lastly, the Court finds that Edison has complied with the "second transmission" restriction of the homestyle exception. What this restriction means is that the homestyle operator may not rebroadcast or secondarily broadcast a radio transmission to the public without liability. A simple example of conduct that would violate this restriction is where the operator tapes a radio broadcast in order to play it later, with or without editing or augmentation. Certain courts have declared that other, less well defined conduct violates the restriction, such as where the speakers are so far from the receiver, or are remotely placed in a room different from the receiver, that the playing of the broadcast through the remote speakers constitutes a second transmission to the public. See Claire's Boutiques, supra, 754 F.Supp. at 1331, fn. 17 (citing cases). The Court doubts the validity of an analysis of the distancing of the speakers in various stores, but in any case finds that Edison's policy to place the two speakers no more than fifteen feet from the receiver is well within the range of any modest homestyle setup, and does not violate the second transmission restriction.

2. Size and Financial Criteria of Edison's Stores

BMI also raised the argument that Edison's stores are not "small commercial establishments, whose size and annual revenue would not justify the purchase of a commercial background music service and a license with BMI." BMI points to language in the legislative history, H.R. 94-1476, supra, and to cases that have focused on these criteria to deny the exemption of Section 110(5). See Memorandum in Support of Defendant's Response to Plaintiff's motion for Summary Judgment, at 14-19. These cases have focused on the Aiken business, its size and modest revenues, in finding that larger sized and more profitable businesses (which also had hightech, augmented, non-homestyle equipment) were not exempted.
The Court notes that the criteria BMI stresses are nowhere to be found in the statutory section, and doubts the necessity to look beyond the clear terms of the statute to find hidden requirements in legislative history.
Legislative history may show the meaning of the texts  may show, indeed, that a text `plain' at first reading has a strikingly different meaning  but may not be used to show an `intent' at variance with the meaning of the text.... Legislative history helps us to learn what Congress *772 meant by what it said, but it is not a source of legal rules competing with those found in the U.S.Code.
Matter of Sinclair, 870 F.2d 1340, 1344 (7th Cir.1989). It is clear from the statutory language of the homestyle exception that Congress chose to focus on the type of equipment and the manner in which it is used, and not on the size or financial strength of the business that employs the equipment. Plaintiff's stores are all relatively small in size, although they generally exceed the selling area square-footage of the Aiken fast-food restaurants, and many of the stores would likely be found to be more profitable than Aiken's establishments. However, the Court adopts the reasoning of the court in Claire's Boutiques, 754 F.Supp. at 1332-1335, in finding that the size or financial strength criteria do not disqualify Edison's stores from the homestyle exception.

3. Berne Convention

BMI's last argument is that the Berne Convention for the Protection of Literary and Artistic Works, September 26, 1986, somehow limits the homestyle exception. The United States adopted the Berne Convention in 1988. See Berne Convention Implementation Act of 1988, Pub.L. No. 100-568, 102 Stat. 2853. BMI focuses on Article XIbis of the convention, which states that an author of a musical work possesses the exclusive right to authorize the "public communication by loudspeaker or any other analogous instrument transmitting by signs, sound, or images, the broadcast of the work." Berne Convention, Art. XIbis(1)(iii). It is difficult to see how this provision even affects the homestyle exception of 17 U.S.C. § 110(5), but if there is any doubt on this matter, the Ad Hoc Working Group on United States Adherence to the Berne Convention apparently determined that Section 110(5) comports with the requirements of the convention. See Final Report of the Ad Hoc Working Group 16-17, reprinted in 10 Colum.-VLA J.L. & Arts. 516, 517 (1976). Furthermore, Congress amended Title 17, U.S.C., to add a provision stating in pertinent part:
Any rights in a work eligible for protection under this title that derive from this title, other Federal or State statutes, or the common law, shall not be expanded or reduced by virtue of, or in reliance upon, the provisions of the Berne Convention, or the adherence of the United States thereto.
17 U.S.C. § 104(c) (West Supp.1990). The Court finds that the Berne Convention has no impact on the application of Section 110(5) in this matter.

D. CONCLUSION
Therefore, for the reasons stated above, the Court will grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgment. The Court declares, pursuant to 28 U.S.C. § 2201, that plaintiff's "Radio Policy" is exempted by the "homestyle exception" of 17 U.S.C. § 110(5), and that plaintiff is not liable to defendant for licensing fees as to music played in plaintiff's stores pursuant to Edison's "Radio Policy".