953 F.2d 376
 1992 Copr.L.Dec. P 26,890
 DIAGNOSTIC UNIT INMATE COUNCIL; John Merrick, President;
Eugene Issac Pitts, 1st Vice President; Jerry McFarland,
2nd Vice President; Terry Tolliver, Secretary/Treasurer;
Solomon Eskew, Secretary/Treasurer; Earl Thompson, Chaplain
Services Representative, Appellants,
v.
MOTION PICTURE ASSOCIATION OF AMERICA, INC.; Films
Incorporated; Swank Motion Pictures, Inc., Appellees.
 No. 89-2791.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 16, 1991.
Decided Jan. 7, 1992.
 
 Diagnostic Unit Inmate Council, appellant pro se in this appeal.
 Before JOHN R. GIBSON, BOWMAN and LOKEN, Circuit Judges.
 PER CURIAM.
 
 
 1
 A group of inmates who comprise the executive committee of the Diagnostic Unit Inmate Council (inmates) of the Arkansas Department of Correction (Department) appeals from the final judgment entered in the District Court for the Eastern District of Arkansas dismissing their complaint under 28 U.S.C. § 1915(d). For the reasons discussed below, we reverse the judgment of the district court and remand with directions.
 
 
 2
 The inmates filed a complaint seeking declaratory and injunctive relief against the Motion Picture Association of America, the body which represents the principal producers, copyright holders, and distributors of motion pictures in the United States; and Films, Inc., and Swank Motion Pictures, Inc., licensed vendors for copyright holders doing business in Arkansas as distributors of film videos (distributors). The inmates sought class certification.
 
 
 3
 The inmates explained that they are regularly permitted to view movies which the Department obtains from the distributors. The distributors provide the Department a catalog listing all video movies available through their services and the Department compiles the scheduled movies which the distributors then provide to the various units of the Department to be shown in rotation. The inmates alleged the distributors receive a fee in excess of $15,000 annually though the inmates admitted they are not privy to the actual contract terms between the distributors and the Department. They claimed, however, that the funds to pay for these services are provided from the Inmate Welfare Fund, an account established under Arkansas law for the general benefit of inmates in the Department. About 76 movies are provided by the distributors annually. The inmates noted that such videos are available for a market rental rate of about $2.50 through local rental companies. The inmates claimed that they inquired about being permitted access to local rental companies and were informed that such a procedure would infringe copyright laws. They alleged they are being injured by the current policy.
 
 
 4
 The inmates attempted to compare their situation to a "homesetting," i.e., they are in a controlled, restricted environment, removed from public access, no fees or admission are charged and the viewers are in their assigned living areas, rather than at a public performance. They sought a declaratory judgment and requested a temporary injunction to permit them to be able to obtain movies through the Department from local rental agencies, appointment of counsel, and other relief.
 
 
 5
 The district court issued a memorandum and order in which it held that the inmates had failed to state any claim against the named defendants upon which relief may be granted. The court stated that the inmates only speculated as to defendants' interpretation of copyright law and anticipated what their response to the inmates' claims might be. The court dismissed the complaint and the inmates filed a timely notice of appeal.
 
 
 6
 On appeal, the inmates state that a compliance attorney for the Department informed them that the defendants would prosecute if a video cassette were shown within the prisons without a license. They indicate that they had solicited the state's attorney general for an opinion, which had not been forthcoming. They suggest that the copyright laws may provide for a possible exception in the prison circumstances, pursuant to 17 U.S.C. § 110 (exemption granted for social functions organized and promoted by certain nonprofit groups and organizations). The inmates concede they are vicarious parties in an action, but the real parties in interest.
 
 
 7
 In order for appropriate invocation of the Declaratory Judgment Act, there must be a concrete case affecting the legal relationships of parties having adverse legal interests susceptible to immediate and definitive determination of the parties' legal rights in an adversary proceeding upon the facts alleged. Sherwood Medical Indus. v. Deknatel, Inc., 512 F.2d 724, 727 (8th Cir.1975) (quoted cases omitted). Generally, there is an actual controversy for purposes of declaratory judgment only where a defendant holding the [copyright] has either expressly or impliedly charged the plaintiff with infringement. See id. The inmates do not make that threshold showing, given that the Department is the entity which acquires performance rights for the video cassette movies shown in the prisons.
 
 
 8
 Every action is to be prosecuted in the name of the real party in interest. See Fed.R.Civ.P. 17(a). Federal Rule of Civil Procedure 19(a) provides for joinder of persons needed for just adjudication. The Department is subject to service of process, and its joinder would not deprive the district court of jurisdiction over the subject matter of the action; in the Department's absence, complete relief cannot be accorded among those already parties. The rule provides that if such a person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff, but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. See Enterprise Management Consultants v. United States ex rel. Hodel, 883 F.2d 890, 892-93 (10th Cir.1989) (general agreement that issue of whether party is indispensable is not waivable and reviewing court has independent duty to raise issue sua sponte).
 
 
 9
 Federal Rule of Civil Procedure 19(a) is fully applicable to declaratory judgment actions. See Fed.R.Civ.P. 57; State Farm Mut. Auto Ins. Co. v. Mid-Continent Casualty Co., 518 F.2d 292, 294-95 (10th Cir.1975). While declaratory relief may properly be withheld for nonjoinder of interested parties, if it otherwise appears that declaratory relief would serve a useful purpose, Federal Rule of Civil Procedure 21 provides courts with a procedural device enabling them to order the joinder of additional parties, even on their own initiative, so as to be able to give complete relief. See Halladay v. Verschoor, 381 F.2d 100, 108 (8th Cir.1967).
 
 
 10
 We believe that declaratory relief in this case may serve a useful purpose given that the State of Arkansas may be expending a significant sum of money from inmate welfare funds for a license. Moreover, the prison situation may constitute an exception to the copyright law's proscriptions for public performances. Cf. Sioux Falls Cable Television v. South Dakota, 838 F.2d 249, 256 (8th Cir.1988) (state's interception of satellite signals and retransmission into inmates' individual cells falls within the "private viewing" exception of 47 U.S.C. § 605(b)); Edison Bros. Stores, Inc. v. Broadcast Music, Inc., 760 F.Supp. 767 (E.D.Mo.1991). ("Home style exception" of 1976 Copyright Act, which exempts from infringement public playing of radio broadcast on single receiving apparatus of kind commonly used in homes, found to apply to national retail chain of approximately 2500 stores that allows each of its stores to operate only low grade radio-only receivers).
 
 
 11
 We reverse and remand to the district court with directions that counsel be appointed for the inmates and that the court consider, after obtaining the views of the Attorney General of Arkansas, whether the Department should be joined.
 
 
 12
 BOWMAN, Circuit Judge, dissenting.
 
 
 13
 I fail to see how joining the Department of Correction will create jurisdiction. As there does not appear to be any controversy between the Department and the defendants, it follows that even if the Department is joined there still will be no case or controversy and thus no basis for Article III jurisdiction.
 
 
 14
 I am puzzled as to why the majority would seek to promote a case or controversy where none exists. If the Department had any wish to assert a claim for declaratory relief against the defendants, it could have done so long ago.
 
 
 15
 Further, since the majority acknowledges, ante page 378, that there presently is no case or controversy, I cannot fathom why the majority opinion directs the district court to appoint counsel.
 
 
 16
 Seeing no case or controversy, and being firmly convinced that seeking to create a controversy where none exists is the antithesis of our proper function, I respectfully dissent.