_____

No. 94-2867
No. 94-2917
_____

Diagnostic Unit Inmate Council;      *
John Merrick; Eugene Issac           *
Pitts; Jerry McFarland; Terry        *
Tolliver; Solomon Eskew;             *
Earl Thompson,                       *
                                     *
        Plaintiffs - Appellants,     *
                                     *
Arkansas Department of               *    Appeals from the United States
Correction,                          *    District Court for the
                                     *    Eastern District of Arkansas.
        Involuntary Plaintiff,       *
                                     *
        v.                           *
                                     *
Films Incorporated; Swank            *
Motion Pictures, Inc.,               *
                                     *
        Defendants - Appellees.      *
                                _____

            Submitted:  September 13, 1995

                  Filed:  July 8, 1996
                                _____

Before BOWMAN, JOHN R. GIBSON, and LOKEN, Circuit Judges.
                                _____

LOKEN, Circuit Judge.


     The Arkansas Department of Corrections ("ADC") shows videotaped
movies to inmates in the common areas of its prisons.  In 1985, an attorney
representing motion picture copyright owners wrote ADC, warning that it
would infringe owner copyrights to use videotapes licensed for home use
only at these public performances.  ADC has since contracted with appellees
Films Inc. ("Films") and Swank Motion Pictures, Inc. ("Swank"), to provide
videotaped movies that come with "public performance distribution rights."

Certain Arkansas inmates commenced this class action against Films and Swank seeking a declaratory judgment under the Copyright Act that in-prison showings of "home use only" rented movies do not infringe the owners' copyrights, either because prison showings are not "public performances" within the meaning of 17 U.S.C. §§ 101 and 106(4), or because such showings are "fair use" within the meaning of 17 U.S.C. § 107. The inmates believe that ADC could obtain a more desirable selection of movies at less cost by renting from local video stores. For example, the 1994 contract between ADC and Swank provided that Swank would supply 121 videotapes for a total annual cost of $9,600, whereas the parties have stipulated that ADC could rent a comparable number of "home use only" videotapes for an annual cost of about $2,200.

The district court[1] initially dismissed the complaint for failure to state a legally cognizable claim, but we remanded with directions to consider whether ADC should be joined. Diagnostic Unit Inmate Council v. Motion Picture Ass'n of America, Inc., 953 F.2d 376, 379 (8th Cir. 1992). On remand, ADC was joined as an involuntary plaintiff under Fed. R. Civ. P. 19(a). However, when ADC declined to take a position in the lawsuit, the district court again dismissed on the ground that there is no actual controversy. The inmates appeal. Counsel for ADC has advised this court that ADC "did not join with the Inmate Council in appealing the judgment of the district court and is, therefore, not an appellant in this case." Agreeing with the district court that ADC's refusal to participate means there is no actual controversy, we affirm.

1. The Declaratory Judgment Act authorizes federal courts to declare the rights of interested parties "[i]n a case of actual controversy." 28 U.S.C. § 2201. The requirement of an "actual controversy" is imposed by Article III of the Constitution. See

---

[1]The HONORABLE GARNETT THOMAS EISELE, United States District Judge for the Eastern District of Arkansas.

Steffel v. Thompson, 415 U.S. 452, 458 (1974). In general, an actual controversy is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

In patent and copyright cases, there is an actual controversy if "defendant in the declaratory judgment lawsuit has either expressly or impliedly charged the plaintiff with infringement." Sherwood Medical Indus., Inc. v. Deknatel, Inc., 512 F.2d 724, 727 (8th Cir. 1975). The defendant copyright owner must have evidenced its intent to enforce a copyright, usually by a charge or threatened charge of infringement, such as the 1985 attorney letter to ADC. And the declaratory judgment plaintiff must have engaged in "present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993). In a copyright case, "plaintiff must show that it has actually published or is preparing to publish the material that is subject to the defendant's copyright [in a manner that] places the parties in a legally adverse position." Texas v. West Pub. Co., 882 F.2d 171, 175 (5th Cir. 1989), cert. denied, 493 U.S. 1058 (1990); see also Wembley, Inc. v. Superba Cravats, Inc., 315 F.2d 87, 90 (2d Cir. 1963) ("where there is no actual manufacture, use or sale, and no immediate intention and ability to practice the invention, there is no justiciable [patent] controversy").

The inmates as declaratory judgment plaintiffs cannot satisfy this standard. True, the inmates have an indirect financial stake in the issue because ADC pays for movie rentals from an Inmate Welfare Fund generated by profits from commissaries sales to inmates and prison employees. However, while that Fund must be spent "for the general benefit of the inmates," Ark. Code Ann. § 12-29-107, ADC has total authority over all Fund expenditures and, more importantly, ADC has complete control over the renting and

-3-

showing of videotaped movies at its prisons.  Inmates may request certain movies, but they cannot rent movie videotapes for prison showings.  The inmates do not, and cannot, engage in the activity that prompted the copyright owners' 1985 charge of infringement.  Thus, there is no actual controversy between the inmates and defendants Films and Swank that would support Declaratory Judgment Act jurisdiction.

2.  On remand, we directed the district court to "consider, after obtaining the views of the Attorney General of Arkansas, whether [ADC] should be joined."  953 F.2d at 379.  ADC received the 1985 infringement letter, and it continues to rent and show videotaped movies in its prisons.  If ADC credibly asserted a present intent to use home-use-only movies for these showings, it would have standing to seek a declaratory judgment that such activity would not infringe the owners' copyrights.  However, though invited to join and later involuntarily joined in the action, ADC has steadfastly refused to take a position on these copyright issues.  There is no other evidence in the record that Films, Swank, or any copyright owner objects to the way in which ADC is now obtaining and showing videotaped movies.  Accordingly, there is no party plaintiff whose present activity, or intended present activity, could constitute infringement.

The inmates nonetheless suggest that ADC's joinder as an involuntary plaintiff, without more, created an actual controversy. We disagree. Rule 19(a), which authorizes joinder of unwilling plaintiffs, "makes no provision for a plaintiff to require another person to maintain an action vested solely in such other person, even though its maintenance might result in benefit to the plaintiff." Coast v. Hunt Oil Co., 195 F.2d 870, 872 (5th Cir.), cert. denied, 344 U.S. 836 (1952).  See also Rhode Island Comm. on Energy v. General Servs. Admin., 561 F.2d 397, 402-03 (1st Cir. 1977); In re Interstate Motor Freight System IMFS, Inc., 71 B.R. 741, 746 (Bankr. W.D. Mich. 1987).

A narrow exception to this general rule originated with <u>Independent Wireless Tel. Co v. Radio Corp. of Amer.</u>, 269 U.S. 459 (1926), a case in which the holder of an exclusive patent license sought to sue for infringement of the patent. The exception is that an involuntary plaintiff may be joined to cure the original plaintiff's inability to press a claim if the original plaintiff and the involuntary plaintiff have "such a relationship that the absent party must allow the use of his name as plaintiff." 3A James W. Moore et al., <u>Moore's Federal Practice</u> ¶ 19.06 at 84 (2d ed. 1995). But the inmates and ADC have no such relationship here. ADC has no obligation, contractual or otherwise, to allow the inmates to use its name to secure declaratory judgment relief that only ADC may seek.

3. After concluding that this case presents no actual controversy, the district court went on to consider the merits of the inmates' copyright claims because that would achieve judicial economy in the event this court held, in light of ADC's "somewhat ambiguous position," that there is declaratory judgment jurisdiction. The district court ruled in favor of the copyright owners, concluding that prison showings are public performances and are not fair use.

We do not criticize the district court for provisionally considering these issues. However, one of the problems with advisory opinions is that they are made on advisory records. Because ADC elected not to intervene to aggressively challenge the copyright owners' position, we do not know the factual details surrounding the showing of videotaped movies in ADC prisons, nor do we know the purposes served by this aspect of ADC's penal program. These kinds of facts seem essential to apply both the fair use and the public performance statutes. <u>See</u> <u>Sony Corp. v. Universal City Studios, Inc.</u>, 464 U.S. 417 (1984) (fair use); <u>On Command Video Corp. v. Columbia Pictures Indus.</u>, 777 F. Supp. 787, 789-90 (N.D. Cal. 1991) (public performance). Accordingly, the district court's

discussion of the merits of these copyright issues should be considered vacated as moot.

The judgment of the district court is affirmed. We thank appointed counsel for his excellent representation of the inmates.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. While ADC has been joined as a party primarily for the purpose of representing the interests of the inmates, it has declined to take a position in the lawsuit resulting in its dismissal, and its counsel advises this court that it did not join with the Inmate Council in appealing the judgment. The court's decision today comes down to the simple statement that "ADC's refusal to participate means there is no actual controversy, we affirm." In essence, we have allowed an involuntary plaintiff to simply abandon the interests which it was appointed to represent.

This runs counter to the principle of providing for involuntary plaintiff status. An involuntary plaintiff's failure to act or appeal should not imply the absence of a real controversy. The involuntary nature of the status would not make it unsurprising that the involuntary plaintiff would fail to act. Should this be the case, as it is here, the actual plaintiffs should be allowed to proceed in the name of the involuntary plaintiff.

The court's opinion acknowledges the inmate's financial stake in the issue, because ADC pays for movie rentals from an inmate welfare fund generated by profits from commissary sales to inmates and prison employees. The opinion goes on to state that by statute ADC has total authority over all fund expenditures, as well as complete control over the renting and showing of videotaped movies at its prisons. In my view, the district court's joinder of the

ADC should be viewed as a recognition of a fiduciary duty by ADC toward the inmates/Diagnostic Unit Inmate Council. The concept of an involuntary plaintiff arises from equity. In some situations there is recognition that the party sought to be joined [as an involuntary plaintiff] has a duty to allow the named plaintiff to use its name in the action. 7 Charles A. Wright et al., Federal Practice and Procedure § 1606, at 76 (1986). The duty to allow a plaintiff to use its name implies that if there is an opposing interest between the involuntary plaintiff and the defendant, then that controversy is imputed to the plaintiff that brought the action. The involuntary plaintiff is sometimes referred to as "the nominal plaintiff." Thus, it follows that the inmates should be allowed to pursue declaratory judgment "in the name of" the ADC.

The matter of who is named as a party plaintiff is important, because the federal procedural system is premised upon the assumption that those named as parties have rights and duties in the conduct of the litigation. June F. Entman, Compulsory Joinder of Compensating Insurers; Federal Rule of Civil Procedure 19 and the Role of Substantive Law, 45 Case W. Res. L. Rev. 1, 19 (1994). Nevertheless, in the above-cited article discussing the compulsory joinder of compensating insurers, the author makes reference to situations where when the insured otherwise has control of the claim, but fails or refuses to assert it, some states then permit the insurer to bring the claim, citing as an example, City of New York Ins. Co. v. Tice, 152 P.2d 836, 842 (Kan. 1944) (insured should sue for itself and as trustee for the insurer, but if the insured refuses to sue, "justice requires that the insurer be permitted to bring action"). Again, in the insurance context, when the insurer, because of conflict of interest, is not likely to protect the insured's interest, a court may permit the insured to bring and control his own suit. Entman at 25.

ADC, as an involuntary plaintiff, should not be allowed to eliminate the "controversy" through its inaction. This, however, is the net result of the court's opinion today.

Rule 17, in providing that an action shall be prosecuted in the name of the real party in interest, and specifying "bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another" contains descriptions that can well be applied to ADC. When this is read with Rule 19A with the provision allowing joinder of a party as an involuntary plaintiff, we should make sure that those provisions of the rule are effectuated. Here ADC is in essence a bailee of funds that have come from the inmates, possibly a trustee, and with respect to the movie rentals, a party with whom or in whose name a contract has been made for the benefit of the inmates. When the involuntary plaintiff refuses to act, as it has here, we should not allow that refusal to frustrate the intent of the rules, i.e., that the interest of the party be represented. We should allow counsel to be appointed to act for the inmates as actual plaintiffs, in the name of the involuntary, but passive and resistant, plaintiff.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.