**2011 Ark. 124**

**VIBO CORPORATION, INC., Appellant,**

v.

**STATE of Arkansas ex rel. Dustin McDANIEL, Attorney General, Appellee.**

**No. 10–758.**

Supreme Court of Arkansas.

March 31, 2011.

412

Greenebaum Doll & McDonald PLLC, by: John K. Bush and Daniel W. Redding, for appellant.

Dustin McDaniel, Att'y Gen., by: Eric B. Estes, Sr. Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice.

Appellant, Vibo Corporation, Inc. d/b/a General Tobacco (General Tobacco), appeals from the circuit court's order (1) granting appellee State of Arkansas's motion for summary judgment; (2) granting the State's motion to delist Brand Families; (3) ordering General Tobacco to pay $296,846,112.93 in damages to satisfy its total backpayment obligation; and (4) denying General Tobacco's motion to enforce the order staying this matter pending arbitration. We affirm the summary judgment.

General Tobacco is a manufacturer of tobacco products that markets and sells its products to consumers in the United States, including Arkansas. In 1998, the Attorneys General of forty-six states, including the State of Arkansas, as well as the Attorneys General of the District of Columbia, the Commonwealth of Puerto Rico, and four territories (Settling States) entered into the Master Settlement Agree-

ment (MSA) with four tobacco companies called Original Participating Manufacturers.

Under the MSA, the Settling States agreed to settle their respective lawsuits and potential claims against the Participating Manufacturers arising out of certain past and future conduct relating to their tobacco manufacturing businesses in exchange for the Participating Manufacturers' agreement to: (1) pay settlement sums to the Settling States based on their volume of sales in the United States; (2) establish a national foundation dedicated to significantly reducing the use of tobacco products by youth; and (3) implement substantial changes in advertising and marketing practices aimed at promoting public health. MSA section II(jj) requires any Participating Manufacturer that signs the agreement after the original MSA execution date to make any payments (including interest thereon at the prime rate) that it would have been obligated to make in the intervening period had it been participating as of the MSA execution date in 1998. This payment term is referred to as the "backpayment obligation." Since the execution of the MSA in 1998, several other tobacco-product manufacturers, or Subsequent Participating Manufacturers, have settled with the Settling States under the MSA terms.

The MSA also imposed additional payment obligations on the Subsequent Participating Manufacturers. Under MSA section IX(i)(2), the Subsequent Participating Manufacturers are required to make annual payments to the Settling States based on their market share for the prior calendar year. MSA section IX(i)(3) allows the annual payments due by the Subsequent Participating Manufacturers to be reduced by certain offsets and adjustments, including the Non–Participating Manufacturer Adjustment. Under MSA section IX(d)(1), in order to protect the public-health gains achieved by the MSA, certain payments are subject to this Non–Participating Manufacturers Adjustment. The Non–Participating Manufacturer Adjustment is available to neutralize the cost disadvantage to the Participating Manufacturers as compared to Non–Participating Manufacturers caused by the MSA. *See* MSA § IX(d)(2)(E). However, this adjustment to the annual payment does not apply if it is decided by a firm of economic consultants that the disadvantages experienced by the Participating Manufacturers as a result of the MSA were not a significant factor that contributed to the Participating Manufacturer's loss of market share for the year in question. MSA § IX(d)(1)(C).

Additionally, a Settling State's allocated payment from Participating Manufacturers is not subject to a Non–Participating Manufacturer Adjustment if that Settling State had a qualifying statute in effect during the calendar year immediately preceding the year when the payment in question is due, and that state diligently enforced that statute. MSA § IX (d)(2)(B). Offsets and adjustments, like the Non–Participating Manufacturer Adjustment, could only be applied against payments by Subsequent Participating Manufacturers that were due within twelve months after the date on which the Subsequent Participating Manufacturer became entitled to the adjustment. It could not be carried forward beyond that time, even if not fully used.

In 2000, General Tobacco began operating as a Non–Participating Manufacturer, meaning a manufacturer entitled to manufacture and sell cigarettes in the United States without signing the MSA. On August 19, 2004, General Tobacco signed an Adherence Agreement, where it settled with the Settling States and became a Subsequent Participating Manufac-

turer under the MSA. Pursuant to this agreement, General Tobacco acknowledged that it owed $232,959,704.59 as a net backpayment obligation, which covered its sales from the time it began selling tobacco products as a Non–Participating Manufacturer in the United States in 2000 through 2003. Also, under the agreement, an additional backpayment obligation was to be imposed for sales made through the first half of 2004 while General Tobacco was operating as a Non–Participating Manufacturer but before it signed the Adherence Agreement on August 19, 2004. This figure was calculated by Pricewaterhouse Coopers, the independent auditor under the MSA, to be $87,681.527.48. Thus, the total backpayment obligation owed by General Tobacco was $320,641,232,07.

At the time the Adherence Agreement was signed by General Tobacco, it released $78,327,388.54 to the Settling States from the escrow account it was obligated to keep as a Non–Participating Manufacturer, which reduced its total backpayment obligation to $242,313,843.53. According to the Adherence Agreement, General Tobacco agreed to pay the backpayment obligation through a series of installments over a twelve year period, beginning August 30, 2005, at a fixed rate of five percent interest. Although General Tobacco timely made its first backpayment installment in 2005, it ultimately failed to honor its agreement to satisfy its backpayment obligation and admitted that it did not make its entire backpayment installment for the years 2006, 2007, and 2008.

In 2006, a decision was made by the independent auditor not to apply the Non–Participating Manufacturer Adjustment to the Participating Manufacturers, including General Tobacco, for the calendar year 2003 because Arkansas had in effect a qualifying statute and that negated any adjustment under the MSA. After this decision was made, the State moved for a declaratory order in 2006 that it had diligently enforced Arkansas's qualifying statute, the Tobacco Settlement Act, Act 1165 of 1999, during calendar year 2003. The State, in its motion, claimed that this question of whether it had been diligent in its enforcement of this statute was not subject to the arbitration clause of the MSA. The State further asserted that the MSA provides that the Non–Participating Manufacturer Adjustment is not applicable for states that diligently enforce a qualifying statute.

In response, the Original Participating Manufacturers and Subsequent Participating Manufacturers, including General Tobacco, moved to compel arbitration on the issue concerning the independent auditor's decision not to apply the Non–Participating Manufacturer Adjustment to the Original Participating Manufacturers' annual payment because the State had in effect a qualifying statute. The tobacco companies argued that this dispute fit squarely within the arbitration provision in the MSA. The circuit court agreed and ordered arbitration on November 29, 2006. The circuit court, accordingly, denied the State's motion for declaratory order, granted the tobacco companies' motion to compel arbitration, and said that "this matter is stayed pending arbitration" in its order of November 29, 2006.

On July 29, 2009, the State initiated the current proceeding by filing a petition for an enforcement order and declaratory judgment against General Tobacco. In its petition, the State sought an order from the circuit court that General Tobacco had breached the terms of the MSA and the Adherence Agreement and directing General Tobacco to pay all the monies owed immediately, plus applicable interest. The State subsequently moved for summary judgment on November 10, 2009, and re-

quested that the circuit court direct General Tobacco to make the payments it owed. The State also moved to delist the brand families of General Tobacco. On January 14, 2010, General Tobacco moved to enforce the circuit court's order dated November 29, 2006, which General Tobacco argued stayed the entire court litigation pending arbitration.

On March 11, 2010, the circuit court sent a letter to the parties in which it announced its decision to grant the State's motions for summary judgment, to delist the brand families, and to deny General Tobacco's motion to enforce the 2006 order. On March 24, 2010, General Tobacco moved to amend or alter the judgment under rules 59 and 60 and raised the issue of the absence of indispensable parties for the first time. On May 14, 2010, the order granting summary judgment in favor of the State was entered by the circuit court. General |7Tobacco filed a notice of appeal on May 21, 2010 and an amended notice of appeal on May 27, 2010.[1]

### I. *Subject–Matter Jurisdiction*

General Tobacco first claims that the circuit court lacked the necessary subject-matter jurisdiction to enter summary judgment against General Tobacco for backpayments purportedly owed to all of the Settling States. It contends that under the express terms of the MSA, the circuit court has jurisdiction only over MSA-related disputes between General Tobacco and the State of Arkansas. Therefore, according to General Tobacco, the circuit court only had jurisdiction to enter a judgment, if at all, for the amount owed specifically to Arkansas, and not for the amounts owed to all other Settling States.

In response, the State contends that the MSA imposes a unitary payment structure under which the Participating Manufacturers make a single payment into the appropriate escrow account that is then distributed pro rata to each of the Settling States. For this reason, the State argues that the unitary payment structure necessitates that the circuit court enter a judgment for the entire amount owed by General Tobacco to all Settling States in order for Arkansas to receive the full amount it is due. To find otherwise, the State argues, would result in ridiculous consequences with all the Settling States taking a pro rata share of the amount |8paid into escrow that was due to Arkansas. Under this scenario, the State of Arkansas would actually receive only a small percentage of the backpayment amount paid by General Tobacco into the escrow account for breach of the Adherence Agreement.

General Tobacco counters that under the express terms of the MSA, the circuit court only had jurisdiction over MSA-related disputes between General Tobacco and Arkansas. The company points to MSA section VII(a), which provides that "the Court . . . shall retain exclusive jurisdiction for the purposes of implementing and enforcing this Agreement and the Consent Decree *as to such Settling State.*" (Emphasis added.) "Court" is defined in MSA section II(p) as "the respective court in each Settling State to which this Agreement and the Consent Decree are presented for approval and/or entry as to that Settling State." Furthermore, MSA section VII(c)(1) reads that "any Settling

---

1. Both notices of appeal appealed only the May 14, 2010 order. There was no order entered denying or granting General Tobacco's motion to amend or alter the judgment; thus, it was deemed denied on the 30th day after the date it was filed. *See* Ark. R. Civ. P. 59(b); Ark. R. App. P.-Civ. 4(b)(1). No appeal from this denial was taken by General Tobacco.

State or Participating Manufacturer may bring an action in the Court to enforce the terms of this Agreement ... with respect to disputes, alleged violations or alleged breaches *within such Settling State.*" (Emphasis added.) Thus, General Tobacco concludes that according to the express terms of the MSA, the circuit court had exclusive jurisdiction only over the enforcement of the agreement as it related to Arkansas, but not as to the other Settling States.

We first observe that it is elementary blackletter law that subject-matter jurisdiction cannot be conferred on a court by a contract or agreement like the MSA or Adherence Agreement. *See, e.g., Servewell Plumbing, LLC v. Summit Contractors, Inc.,* 362 Ark. 598, 210 S.W.3d 101 (2005). Hence, those agreements do not decide the issue of whether the circuit court has subject-matter jurisdiction over all Settling States in addition to Arkansas.

We further observe that General Tobacco has incorrectly characterized this argument as one of subject-matter jurisdiction. Subject-matter jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties. *Allen v. Circuit Court of Pulaski County,* 2009 Ark. 167, at 10, 303 S.W.3d 70, 76. In the instant case, it is clear that the circuit court had jurisdiction over the subject matter of the underlying dispute, which is breach of contract. The real issue raised by General Tobacco appears to be one of personal jurisdiction of the circuit court over all of the Settling States and the total damage amount, rather than subject-matter jurisdiction. Unlike subject-matter jurisdiction which can be raised at any time, including for the first time by this court sua sponte on appeal, personal jurisdiction and the defense of indispensable parties may be waived by the parties. *See Rowell v.*

*White & Assocs., Inc.,* 302 Ark. 225, 788 S.W.2d 489 (1990); Ark. R. Civ. P. 12(h).

We hold that the circuit court has subject-matter jurisdiction over the issue of the breach of the MSA and the damages owed to Arkansas occasioned by that breach. By necessity, in order for Arkansas to receive its full pro rata share of the damages owed it for breach under the unitary payment structure, the total amount of the damages caused by General Tobacco's breach and owed to all Settling States must be paid into the escrow account. Then the Arkansas percentage under the MSA (0.8280611%) will be applied against it. This is what the circuit court ordered in addition to payments to the other Settling States from the escrow fund under the MSA.

## II. *Indispensable Parties*

The issue then becomes the necessity to join the other Settling States as part of this litigation. General Tobacco asserts that the circuit court's judgment mandating payment of the full damage amount was erroneous because the other fifty-one Settling States were not joined in the Arkansas action. The company maintains that the State's failure to join them as indispensable parties divested the circuit court of the power and authority to enter a judgment for the total backpayment obligation owed to all Settling States. This, it contends, is because each Settling State had an interest in the total backpayment ($296,846,112.93) awarded by the circuit court and failure to join them may impede their ability to protect their interests. General Tobacco emphasizes that both the Declaratory Judgment Act, Arkansas Code Annotated section 16–111–106, and Rule 19 of the Arkansas Rules of Civil Procedure require the joinder of parties that claimed an interest in the subject of the action.

We first point out that the issue of whether the other Settling States are indispensable parties is not preserved for our review on appeal. Although it does not appear that our state courts have specifically ruled on whether a party may waive the defense of indispensable parties under Arkansas Rule of Civil Procedure 19, there are a few cases that brush up against the issue. *See, e.g., Milberg, Weiss, Bershad, Hynes & Lerach, LLP v. State,* 342 Ark. 303, 310–11, 28 S.W.3d 842, 847 (2000) (refusing to address the argument raised by appellants on appeal that the chancellor erred in failing to join them as necessary parties under Rule 19, this court stated that it was "clear from the record that [it] was raised at the last minute and was never ruled on by the chancellor. It is well settled that the failure to obtain a ruling from the trial court is a procedural bar to our consideration of the issue on appeal."); *Taylor v. Hamilton,* 90 Ark.App. 235, 241, 205 S.W.3d 149, 154 (2005) (the court of appeals declined to decide the issue of whether an estate was a necessary party to a paternity action because the appellant clearly waived that issue, stating that "[a]lthough subject-matter jurisdiction cannot be waived, the failure to join a necessary party can be waived by the parties who have assented to the court's personal jurisdiction over them.").

On March 11, 2010, the circuit court sent a letter to the parties informing them of his decision to grant the State's motion for summary judgment and to deny General Tobacco's motion to enforce the stay. On March 24, 2010, after receiving this letter, General Tobacco moved to alter or amend the judgment as provided under Rules 59 and 60 of the Arkansas Rules of Civil Procedure and raised for the first time the specific issue of the other Settling States being indispensable parties under Rule 19. The actual order granting summary judg-

ment in favor of the State and denying General Tobacco's motion to enforce the stay was not entered until May 14, 2010. This order made no mention of General Tobacco's motion to alter or amend the judgment, and there is no order disposing of this motion contained in the addendum or the record in this appeal. General Tobacco's notice of appeal, which appealed only the May 14, 2010 order, was filed on May 21, 2010. An amended notice of appeal was filed on May 27, 2010, but this notice of appeal also stated that General Tobacco was only appealing the circuit court's order of May 14, 2010.

According to Rule 59, a motion made before the entry of judgment becomes effective and is treated as filed on the day after the judgment is entered. In the instant case, because General Tobacco's motion to amend the judgment was filed on March 24, 2010, before the entry of the judgment, it became effective on May 15, 2010, or the day after the date of entry of the summary-judgment order. Additionally, according to Rule 59 and Rule 4(b)(1) of the Arkansas Rules of Appellate Procedure—Civil, if the circuit court neither grants nor denies the postjudgment motion within thirty days of the date on which it is filed or treated as filed, it is deemed denied as of the thirtieth day. Accordingly, because there is no indication in the record that the circuit court ever ruled on General Tobacco's postjudgment motion, it was deemed denied on the thirtieth day after the date it was treated as filed, or June 14, 2010.

Under Rule 4(b)(2) of the Arkansas Rules of Appellate Procedure—Civil, a notice of appeal filed before the disposition of a postjudgment motion like the one filed in the instant case shall be treated as filed on the day after the entry of an order disposing of the last motion outstanding or the day after the motion is deemed denied by

operation of law. The rule also states that such a motion is effective to appeal the underlying judgment, decree, or order. In the case before us, General Tobacco filed its amended notice of appeal on May 27, 2010, which was before June 14, 2010, the date on which its motion to amend or alter the judgment was deemed denied by operation of law. Because of this, General Tobacco's |₁₃amended notice of appeal should be treated as filed on June 15, 2010. However, Rule 4(b)(2) also states that "[a] party who seeks to appeal from the grant or denial of the [postjudgment] motion shall within thirty (30) days amend the previously filed notice." General Tobacco did not amend its notice of appeal to include an appeal from the denial of its motion to amend or alter the judgment. Thus, General Tobacco's motion to amend or alter the judgment, which includes its request to join indispensable parties, cannot be addressed on appeal.

We observe, however, that even though General Tobacco did not raise the specific issue of indispensable parties under Rule 19 until its motion to amend or alter the judgment or appeal the denial of the motion by operation of law, it did maintain throughout the litigation that the State was only entitled to Arkansas's Allocable Share of 0.8280611% of General Tobacco's total backpayment obligation under the MSA, and could not adjudicate the rights of the other Settling States. It raised this issue as one of subject-matter jurisdiction, however, rather than failure to join indispensable parties.

### III. *Applicability of the 2006 Stay Order*

■ We turn next to the scope of the circuit court's 2006 stay order. In response to the State's motion for summary judgment, General Tobacco moved to enforce the circuit court's 2006 order, which

stayed "this matter" pending arbitration. General Tobacco urges that the stay order applied to the entire litigation and not merely to the legitimacy of the Non–Participating Manufacturer Adjustment for calendar year 2003. Hence, according to General Tobacco, the circuit court was foreclosed from considering the State's petition for |₁₄enforcement order which led to the summary judgment at issue in this appeal. The circuit court denied General Tobacco's motion to enforce the stay as part of its May 14, 2010 summary-judgment order.

General Tobacco now contends that it was error for the circuit court to refuse to enforce the 2006 stay because: (1) the stay gave no indication that it applied only to the State's motion for a declaratory order relating to calendar year 2003 filed at that time; and (2) the issues raised by the State in the instant case depend on the resolution of issues which are subject to mandatory arbitration.

In its November 29, 2006 order, the circuit court considered the State's motion for a declaratory order that it had diligently enforced the Tobacco Settlement Act, Act 1165 of 1999, and the tobacco companies' motion to compel arbitration regarding this matter. At that time, the State was specifically seeking a declaratory order finding that it had diligently enforced Act 1165 during calendar year 2003, because section IX(d)(2) of the MSA provides that the Non–Participating Manufacturer Adjustment shall not apply to states that diligently enforce a qualifying statute.

The State argued in 2006 that the question of diligent enforcement was not subject to the arbitration clause of the MSA. The tobacco companies moved to compel arbitration on the issue concerning the independent auditor's decision not to apply the Non–Participating Manufacturer adjustment because the State had in effect a

qualifying statute. The tobacco companies argued that this dispute fits squarely within the arbitration provision in the MSA. The circuit court agreed, citing with approval the decisions of the twenty-two of the twenty-three other states that had considered this same issue. The circuit court denied the State's motion for a declaratory order on November 29, 2006, and granted the tobacco companies' motion to compel arbitration, and stated in its order that "this matter is stayed pending arbitration."

When it denied General Tobacco's subsequent motion to enforce the stay, the circuit court made the following relevant findings in its 2010 summary-judgment order: (1) the November 29, 2006 order related to a separate claim that the State raised against all Participating Manufacturers—whether Arkansas had "diligently enforced" Act 1165 of 1999 during 2003 and, if so, whether an Non–Participating Manufacturer Adjustment could be allocated to Arkansas's Allocated Share for that year; (2) the November 29, 2006 order did not stay the entirety of the docket pending arbitration; (3) the motions to compel arbitration filed by the Participating Manufacturers requested only that the court stay the litigation "with respect to the State's motion for declaratory order;" (4) in its 2006 order, the circuit court clearly stayed further proceedings on the motion for declaratory relief filed by the State with respect to the 2003 Non–Participating Manufacturer Adjustment; and (5) the court did not preclude the State from bringing subsequent petitions or motions, like the one in the case at bar, to enforce the terms of the MSA.

General Tobacco now disputes this order by the circuit court and argues that the 2006 stay gave no indication that it applied only to the State's motion for a declaratory order filed at that time. Therefore, it maintains, the stay applies to the State's petition brought against General Tobacco three years later in 2009. We disagree. The 2006 order was manifestly responding to the State's motion for a declaratory order and the tobacco companies' motion to compel arbitration relating to what occurred in the 2003 calendar year. The circuit court said in its May 14, 2010 order that the motions to compel arbitration filed by the Participating Manufacturers requested only that the court stay the litigation "with respect to the State's motion for declaratory order." That decides the matter in our judgment. Simply because the order contained the language "this matter is stayed pending arbitration," does not mean that the order applied to every issue raised between the parties in subsequent petitions over the next three years.

General Tobacco also asserts that the circuit court should enforce its 2006 stay order broadly because the claims asserted in the State's 2009 petition and subsequent motion for summary judgment depend on resolution of issues that are subject to mandatory arbitration under the MSA § XI(c). General Tobacco contends that the calculation and determination of the amount allegedly owed by General Tobacco in backpayments first requires resolution of the Non–Participating Manufacturer Adjustment disputes, including the dispute over the 2003 adjustment that was subject to the circuit court's 2006 order. Accordingly, argues General Tobacco, the 2006 stay order should have been enforced by the circuit court to stay all matters pending the arbitrators' decision relating to the 2003 matter.

The State's argument that the 2006 stay order does not apply to the current litigation is persuasive. In addition to the fact that the 2006 order stayed the litigation "with respect to the State's motion for declaratory order," the issue in the present litigation is different. The issue before the

circuit court in 2006 directly related to the decision by the independent auditor not to apply the Non–Participating Manufacturer Adjustment because the State had a qualifying statute (Act 1165 of 1999) in effect, while the issue before the circuit court in the instant case involved the failure of General Tobacco to honor its backpayment obligation and the State's actions to enforce that obligation under the MSA and Adherence Agreement. The issues are clearly not the same, and the circuit court correctly declined to enforce the 2006 stay order broadly to encompass the current dispute.

## IV. *Set Offs and Adjustments*

The circuit court, after finding that the 2006 stay order was not applicable to the current action, also found that General Tobacco was not entitled to set off its alleged Non–Participating Manufacturer Adjustment, which is contingent and unliquidated, against its backpayment obligations. The State agrees and asserts that the Non–Participating Manufacturer Adjustment is contingent and unliquidated because whether General Tobacco is entitled to the adjustment at all, and if so, how much, is contingent upon a decision made by the arbitration panel which, as of today, has not been made.

General Tobacco disagrees and claims that in making this determination, the circuit court fundamentally misunderstood the Non–Participating Manufacturer Adjustment and the terms of the MSA. General Tobacco goes on to argue that its outstanding backpayment obligations should also be deemed unliquidated or contingent because the Non–Participating Manufacturer Adjustment has not yet been determined or applied to its backpayment obligations.

This court has said that "[a] contingent liability cannot be set off against an uncon-tingent liability." *Stokes v. Home Life Ins. Co.*, 187 Ark. 972, 63 S.W.2d 657, 658 (1933). A "contingent liability" is a financial or pecuniary obligation that depends on the occurrence of a future and uncertain event. Black's Law Dictionary (9th ed. 2009). An "unliquidated claim" is a claim in which the amount owed has not been determined while a "liquidated claim" is a claim for an amount previously agreed upon by the parties or that can be precisely determined by operation of law or by the terms of the parties' agreement. *Id.*

The State is correct that the Non–Participating Manufacturer Adjustment advanced by General Tobacco is both contingent and unliquidated, and, therefore, cannot be applied to set off the backpayment obligation, which is known and fixed. The Non–Participating Manufacturer Adjustment is contingent, as recognized by the circuit court and the State, upon first a determination and calculation made by the independent auditor that the adjustment applies and then, if a dispute arises as to this finding, upon a determination by the panel of arbitrators that the adjustment applies in a certain year. Further, this adjustment is unliquidated because the amount of the adjustment has not been determined. For instance, the panel of arbitrators considering the applicability of the adjustment for 2003, which was ordered to arbitration by the circuit court's 2006 order, could potentially determine that General Tobacco is entitled to all, some, or none of that adjustment.

In addition, General Tobacco's argument that the circuit court's reasoning misunderstands the nature of the Non–Participating Manufacturer Adjustment is flawed. Essentially, General Tobacco is proposing that because the adjustment has yet to be applied to the 2003 backpayment obligation, the backpayment obligation itself is unliquidated. That is not correct. The total amount of General Tobacco's back-

payment obligation was agreed to by the parties when they signed and executed the Adherence Agreement in 2004. In the event that any Non–Participating Manufacturer Adjustment applies, under the terms of the Adherence Agreement, the amount of the backpayment obligation due each year can be precisely calculated with that adjustment. In short, the backpayment obligations themselves were liquidated and uncontingent, and we so hold.

### V. *Discovery*

■ General Tobacco next claims that the circuit court erred in refusing to provide it with an opportunity to take discovery prior to considering the State's motion for summary judgment. The company asserts that it refrained from taking discovery because (1) it legitimately believed that the entire matter was stayed under the 2006 order; (2) discovery could have led to a waiver of General Tobacco's right to arbitration; and (3) it was concerned that instigating the discovery process would interrupt ongoing settlement negotiations. In short, General Tobacco contends that under Rule 56 of the Arkansas Rules of Civil Procedure, the circuit court should have given it an opportunity to conduct discovery after ruling that the case was not stayed pursuant to its 2006 order.

Rule 56(f) reads as follows:

**(f) When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Ark. R. Civ. P. 56(f).

■ Whether to grant a continuance to allow for further discovery under Rule 56(f) is a matter within the discretion of the court. *Alexander v. Flake,* 322 Ark. 239, 249, 910 S.W.2d 190, 195 (1995). In order for this court to reverse the trial court's denial of the continuance, the appellant must show that the trial court abused its discretion and that the additional discovery would have changed the outcome of the case. *Id.* Under Rule 56(f), the party opposing the motion for summary judgment is required to present an affidavit setting forth the problems the party is having gathering facts to support its opposition to summary judgment. *See Jenkins v. Int'l Paper Co.,* 318 Ark. 663, 887 S.W.2d 300 (1994).

As required by Rule 56(f), General Tobacco included the affidavit of Ronald Denman, the Executive Vice President and General Counsel of General Tobacco, in support of its opposition to summary judgment. Ronald Denman averred that in the period since the State's petition was filed, General Tobacco refrained from taking discovery because the case had been stayed pending arbitration and the State's claims are dependent upon issues that are to be decided in the arbitration and, further, because General Tobacco had been in continuous negotiations with the State regarding potential settlement and did not want discovery to interfere with those negotiations.

In support of its argument, General Tobacco cites this court to an Eighth Circuit Court of Appeals case which concludes that a party seeking arbitration under the Federal Arbitration Act may be found to have waived his right to arbitration if he (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts. *Kelly v. Golden,* 352 F.3d 344, 349 (8th Cir.2003). We have held that

Eighth Circuit decisions, while they may lend guidance to this court, are not binding authority. *Custom Microsystems, Inc. v. Blake*, 344 Ark. 536, 42 S.W.3d 453 (2001).

We disagree that the circuit court abused its discretion by not affording General Tobacco additional time to engage in discovery before entering its summary-judgment order. Almost four years had passed from the circuit court's 2006 order compelling arbitration and staying the matter pending the panel's decision on the 2003 adjustment. The circuit court, as already stated in this opinion, found that it was clear the 2006 stay order only related to the 2003 adjustment. If General Tobacco believed the 2006 stay order precluded discovery on other adjustments or on the breach of its backpayment obligation, it should have petitioned the circuit court on this point before 2010. It failed to do so. We cannot say under these circumstances that the circuit court abused its discretion in denying discovery. *Jenkins v. Int'l Paper Co., supra.*

### ₂₂VI. *Summary Judgment*

 General Tobacco next urges that numerous genuine issues of material fact in connection with their defenses remain to be resolved, making a grant of summary judgment inappropriate. The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment.

A trial court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Brock v. Townsell*, 2009 Ark. 224, 309 S.W.3d 179, 185. The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment, and the opposing party must dem-

onstrate the existence of a material issue of fact. *Id.* After reviewing the undisputed facts, the trial court should deny summary judgment if, under the evidence, reasonable minds might reach different conclusions from the same undisputed facts. *Id.* On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* This review is not limited to the pleadings but also includes the affidavits and other documents filed by the parties. *Id.; see also* Ark. R. Civ. P. 56(c).

*Repking v. Lokey*, 2010 Ark. 356, at *4–5, 377 S.W.3d 211, 215–16.

 As to General Tobacco's contract defenses of economic duress, mistake, and fraudulent inducement raised in connection with its entry into the MSA and the Adherence Agreement, the circuit court found that these defenses do not permit a party to avoid a particular contractual term or obligation. Instead, where these defenses apply, the entire contract would be void ab initio. General Tobacco does not claim that the contracts are void ab initio. Furthermore, the circuit court found that these doctrines do not apply where a party ratifies ₂₃a contract by continuing to perform or by accepting the benefits of the contract after learning of the mistake or misrepresentation. The circuit court concluded that the facts were not in dispute and that General Tobacco continued to accept the benefits of the MSA well after learning of the alleged misrepresentations and, thus, ratified the contract.

General Tobacco, nevertheless, introduced evidence in the form of Ronald Denman's affidavit, averring that misrepresentations were made by the State and other Settling States that induced General Tobacco to join the MSA. Furthermore, General Tobacco introduced evidence that it has consistently protested its treatment under the MSA, which it argues is evidenced by its continual efforts to renegotiate the Adherence Agreement, and the lawsuits brought by General Tobacco in Kentucky and California. On the issues of mistake and misrepresentation, we cannot say the circuit court erred in finding no genuine issue of material fact was at issue due to General Tobacco's ratification of the contract. *See Sims v. First Nat'l Bank, Harrison*, 267 Ark. 253, 590 S.W.2d 270 (1979).

As to General Tobacco's defenses of impracticality and frustration of purpose, the circuit court found that General Tobacco failed to plead essential elements of these defenses. Moreover, the fact that performance of the contract has become economically burdensome is not a sufficient reason to excuse General Tobacco's performance. We further note that General Tobacco does not make an argument on appeal that the circuit court erred in its findings concerning its defenses of impracticality and frustration of purpose. Arguments made below but not argued on appeal are deemed to be abandoned. *See State v. Grisby*, 370 Ark. 66, 69, 257 S.W.3d 104, 107 (2007).

The circuit court also found that General Tobacco was unable to assert the defenses of laches, estoppel, or waiver. The court found that in order to present these defenses successfully, General Tobacco must have good reason to believe, by reason of the State's conduct, that the State has abandoned its right to enforce the backpayment obligation to which General Tobacco agreed. Additionally, the court found that it was clear from the express terms of the MSA and the Forbearance Agreement, which was signed by General Tobacco and the Settling States in August 2006 in order to extend the due date of General Tobacco's August 2006 prior-obligation payment, that the State had expressly reserved the right to the backpayments owed by General Tobacco.

The circuit court further concluded that in order to show that the State had abandoned its right to enforce the backpayment obligation, General Tobacco had to produce a written agreement by that Settling State indicating that it waived its rights to the backpayment. General Tobacco presented evidence that it had informed the State of its inability to satisfy its backpayment obligations as early as 2005. It went on to argue that because the State failed to take any action to recover these payments until 2009 and that during that time the State represented it would negotiate a settlement with General Tobacco, the defenses of estoppel, waiver, laches, and unjust enrichment apply. General Tobacco, however, failed to produce any written evidence that the State had waived or abandoned its expressly reserved rights to recover these backpayments. Accordingly, summary judgment was appropriate on these points.

The circuit court also found that General Tobacco waived its right to challenge either the MSA or the State's tobacco-related statutes on antitrust or constitutional grounds. The court found that General Tobacco had previously litigated these issues and lost in the United States District Court for the Western District of Kentucky. *See Vibo Corp., Inc. v. Conway*, 594 F.Supp.2d 758 (W.D.Ky.2009). The court, as a result, concluded that the attempt to reargue the same antitrust and constitutional claims in the instant case

was barred by the doctrine of collateral estoppel.

▇▇▇ Turning to collateral estoppel, in order for it to apply, four elements must be present: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *See Powell v. Lane*, 375 Ark. 178, 185, 289 S.W.3d 440, 444 (2008). Moreover, the party against whom collateral estoppel is asserted must have been a party to the earlier action and must have had a full and fair opportunity to litigate the issue in that first instance. *Id.* Unlike res judicata, which acts to bar issues that merely could have been litigated in the first action, collateral estoppel requires actual litigation in the first instance. *Id.*

The issues of General Tobacco's federal antitrust claims and federal constitutional claims were litigated and decided against General Tobacco in the previous case in Kentucky. *See Vibo Corp., Inc. v. Conway, supra.* The circuit court, accordingly, correctly found that relitigation of these issues was barred because of collateral estoppel and that summary judgment was appropriate. We affirm on this point.

▇▇▇ As a final point, the circuit court also found that by executing the MSA, General Tobacco waived the state-law claims, including those related to alleged anticompetitive behavior, because those claims are constitutional in nature. MSA section XV reads

> Each Participating Manufacturer further acknowledges that it understands that certain provisions of this Agreement may require it to act or refrain from acting in a manner that could otherwise give rise to state or federal con-

stitutional challenges and that, by voluntarily consenting to this Agreement, it ... waives for the purposes of performance of this Agreement any and all claims that the provisions of this Agreement *violate the state or federal constitutions.*

(Emphasis added.) Thus, by signing the MSA, General Tobacco expressly waived its right to mount such an attack on constitutional grounds, and summary judgment was appropriate.

## VII. *Allocation of Backpayment Amount*

▇▇▇ Since the petition for enforcement was brought by the State in 2009, General Tobacco has claimed both before the circuit court and on appeal that the State could only enforce the MSA with respect to Arkansas and no other Settling State. As already decided, General Tobacco, however, did not preserve the issue of whether the other Settling States should be ordered in by the circuit court as necessary or indispensable parties. But it did preserve the issue of whether the circuit court's jurisdiction was limited under the MSA with respect to what the court could order as relief for the other Settling States which were not parties before it.

The unitary payment structure of the MSA requires a lump-sum payment to be paid into an escrow account and then distributed pro rata among the Settling States according to their allocable percentages. Arkansas is entitled to its Allocable Share of 0.8280611% of General Tobacco's total backpayment obligation of $296,846,112.93, or roughly $2.45 million. In order for Arkansas to receive this $2.45 million and be afforded complete relief, General Tobacco must pay the entire backpayment obligation into its MSA escrow account. Accordingly, the circuit court correctly directed that the sum of

$296,846,112.93 be paid into the MSA escrow account, and that the funds be paid to the Settling States.

We disagree with General Tobacco, as already stated, that the circuit court lacks subject-matter jurisdiction to find General Tobacco is in breach of the MSA and to fix the damages resulting from that breach. However, this does not resolve the issue of allocating damages to the remaining Settling States, other than Arkansas, that are not parties before the circuit court. Rule 19 of the Arkansas Rules of Civil Procedure reads in pertinent part: "A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties...." Ark. R. Civ. P. 19(a). The rule continues by saying that if such a person "has not been joined, the court shall order that he be made a party." The rule does not condition this authority on motion by a party.

According to David Newbern and John Watkins in their book on Arkansas Civil Practice and Procedure, "[t]his language suggests that the court may do so on its own motion." David Newbern & John Watkins, 2 *Arkansas Civil Practice and Procedure* § 7.6 (5th ed. 2010). This interpretation certainly corresponds to federal jurisprudence which has a rule similar to our Rule 19 but, of course, is not binding on this court. *See, e.g., Oklahoma v. Tyson Foods, Inc.,* 258 F.R.D. 472 (N.D.Okla.2009) ("issue of the indispensability, generally is not waivable, and is one which courts have an independent duty to raise sua sponte."); *Symes v. Harris,* 472 F.3d 754 (10th Cir.2006); *Diagnostic Unit Inmate Council v. Motion Picture Ass'n of Am.,* 953 F.2d 376 (8th Cir.1992) (recognizing the general agreement that the issue of whether a party is indispensable is not waivable and that the reviewing court has

an independent duty to raise the issue sua sponte); *Freeman v. Nw. Acceptance Corp.,* 754 F.2d 553 (5th Cir.1985) (failure to raise issue of indispensable parties below does not result in waiver as this court may raise the issue sua sponte); *Jeffries v. Georgia Residential Fin. Auth.,* 678 F.2d 919 (11th Cir.1982) (failure to object to nonjoinder by proper motion before trial court does not constitute waiver). Hence, though General Tobacco did not preserve the issue of indispensable parties for our review but only challenged the authority of the circuit court over the other Settling States, Rule 19 appears to authorize the joinder of indispensable parties by the courts sua sponte.

Arkansas is a party to this litigation, and it is clear that the State is entitled to immediate payment of the $2.45 million due it under the MSA. The issue remains concerning the allocation of the balance of the funds to the Settling States that are not parties before this court. Without those Settling States as parties, we cannot fathom how appropriate relief under the MSA can be granted to them. We are aware that Exhibit A to the MSA provides fixed percentages for all Settling States to be applied against the escrow funds, but the ultimate amount to be paid could well be called into question by either the Settling States or General Tobacco.

Because General Tobacco did raise the issue of the circuit court's lack of authority over the Settling States other than Arkansas, which equates to lack of personal jurisdiction, and because Rule 19 grants authority to our courts to bring in indispensable parties on their own motion, we reverse the order of the court regarding payment to the other Settling States. We conclude that the other Settling States appear to be indispensable parties for allocation of the escrowed funds, and we remand this matter to the circuit court to

weigh joinder of the other Settling States as indispensable parties under Rule 19 so that complete relief can be afforded.

Affirmed in part; reversed and remanded in part.