2012 Ark. 463

**FALCON CABLE MEDIA LP, Falcon Telecable LP, and Interlink Communications Partners LLC, d/b/a Charter Communications, Appellants**

v.

**ARKANSAS PUBLIC SERVICE COMMISSION, Appellee.**

No. 11–1168.

Supreme Court of Arkansas.

Dec. 13, 2012.

Dover Dixon Home PLLC, Little Rock, by: Michael O. Parker and William C. Bird III; and Sutherland Asbill & Brennan LLP, by: Eric S. Fresh and Jonathan A. Feldman, for appellants.

John T. Elkins, Arkadelphia and Dallas W. Heltz, Arkansas Public Service Commission, for appellee.

COURTNEY HUDSON GOODSON, Justice.

This case concerns the assessment of ad valorem taxes on the real and personal properties of appellants Falcon Cable Media LP, Falcon Telecable LP, and Interlink Communications Partners LLC, d/b/a Charter Communications (collectively "Charter") made by the Tax Division of appellee Arkansas Public Service Commission ("Commission"). Charter appeals the decision of the Pulaski County Circuit Court affirming the Commission's order upholding the Tax Division's assessments for the years 2006 through 2009. For reversal, Charter contends that the assessments are erroneous because they include the valuation of intangible personal property, which it claims is exempt from taxation. It also argues that an assessment of

intangible property marks an illegal change in policy because the Tax Division failed to promulgate rules that would provide notice of the change to taxpayers. Before the court is also a motion to strike filed by the Commission that we passed to consider with the submission of the case. Jurisdiction of this appeal properly lies with this court pursuant to Supreme Court Rule 1–2(b)(4) & (6), as the case involves an issue of substantial public interest concerning the interpretation of an act of the General Assembly. *See Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n*, 307 Ark. 171, 818 S.W.2d 935 (1991). We deny the motion to strike and affirm the Commission's decision.

*Factual Background*

Charter is engaged in the business of providing cable-television services to subscribers in various counties in Arkansas. In that pursuit, Charter owns real and personal property within the state for use in the ordinary course of its business. It also has entered into franchise agreements with municipalities for the provision of cable-television services to its subscribers. In a consolidated petition for review, Charter challenged the Tax Division's ad valorem assessments of its properties for the tax years 2006 through 2009. In its petition, it alleged that, prior to 2005, the Tax Division had not included the value of intangible personal property, such as franchise agreements, customer relationships, and good will in the ad valorem tax base of cable-television companies. Further, Charter asserted that, beginning in 2005, the Tax Division included in its ad valorem tax assessment the value of its intangible property, resulting in significantly higher assessments and correspondingly increased tax bills. As its challenge, Charter argued that the Tax Division lacked statutory authority to assess the intangible personal property of cable-television companies in Arkansas.[1] In its answer to the petition, the Tax Division did not directly respond to the allegation that a sea-change had occurred in 2005. Instead, it asserted that, prior to 2005, Charter had refused to complete the forms and to supply financial information requested by the Tax Division.

By designation order, the Commission appointed a presiding officer to conduct the proceedings. The presiding officer entered a scheduling order in which he noted that, although it was customary for parties to pre-file prepared testimony and exhibits with regard to valuation issues, briefing would suffice on the issue involving the assessment of intangible personal property because the question raised was essentially one of law. In its brief, Charter argued that the provisions in the code pertaining to the Tax Division's authority to assess the property of cable-television companies are found exclusively in Subchapter 18 of Chapter 26 of Title 26 to the Arkansas Code, namely Arkansas Code Annotated sections 26–26–1801 to –1803 (Repl.2012), whereas the provisions relevant to other businesses assessed by the Tax Division are found in Subchapter 16 of Chapter 26 of Title 26, found at Arkansas Code Annotated sections 26–26–1601 to –1616 (Repl. 2012). It asserted that, because cable-television companies are not among the entities listed in section 26–26–1601, its property was not subject to assessment under the provisions of Subchapter 16.

1. Charter also contested the Tax Division's determination of the value of its personal property, both tangible and intangible. However, Charter raises no argument on appeal concerning the valuation of its personal property. This issue, therefore, is considered abandoned on appeal. *DePriest v. AstraZeneca Pharm., L.P.*, 2009 Ark. 547, 351 S.W.3d 168 (2009); *Wagner v. Gen. Motors Corp.*, 370 Ark. 268, 258 S.W.3d 749 (2007).

Charter thus argued that section 26–26–1606(b), requiring the Tax Division to "ascertain the value of all property, tangible and intangible, including good will, easements, and franchises," does not apply to cable-television companies. Charter maintained that, because the provisions of Subchapter 18 do not provide for the assessment of intangible personal property, the intangible personal property of cable-television companies was exempt from taxation pursuant to Arkansas Code Annotated section 26–3–302 (Repl.2012).[2]

In response, the Tax Division asserted that the argument raised by Charter that section 26–26–1606(b) does not apply to cable-television companies was rejected by the Commission in *In re Comcast Cable Corporation of Little Rock, Inc.*, Docket No. 06–097–TD (Order No. 13), and that the presiding officer was bound by that decision, which was not appealed.[3] In addition, it argued that Arkansas Code Annotated section 26–24–103 (Repl.2012) gave it assessment authority over cable companies as well as other entities and that the provisions found in Subchapter 16 provided the mechanics of how companies listed in section 26–24–103 are assessed. The Tax Division also asserted that, although the codified version of section 26–26–1606(b) appears to limit its application to "this subchapter," the language of the original act passed by the General Assembly used the word "act" and not "subchapter." The Tax Division argued that the substitution of the word "subchapter" for "act" was a codification error and that, when the statute is read using the word "act," it is clear that section 26–26–

1606(b) and its requirement of assessing intangible personal property applies to all companies it is obligated to assess. The Tax Division further argued that Charter's contention that its intangible personal property was exempt from taxation pursuant to section 26–3–302 was contrary to the decision in *Ozark Gas Pipeline Corp. v. Arkansas Public Service Commission*, 342 Ark. 591, 29 S.W.3d 730 (2000).

The presiding officer determined that he was bound by Order No. 13 previously issued in the *Comcast* case where the Commission had ruled that the value of intangible personal property is properly included in the ad valorem tax assessment of a cable-television company. He also ruled that Charter's argument that its intangible personal property was exempt from taxation was precluded by the decision in *Ozark Gas, supra*. The Commission approved the presiding officer's order without modification, and Charter appealed to the Pulaski County Circuit Court. The circuit court found no error in the Commission's order and affirmed it in all respects. This appeal followed.

*Motion to Strike*

Prior to submission, the Commission filed a motion to strike, taking issue with a request made by Charter in its reply brief that we take judicial notice of Order No. 13 in the *Comcast* proceeding. In that order, the Commission stated,

Prior to the 2005 tax year, cable television companies were not required to report the value of intangible personal property, such as, franchises, licenses,

---

**2.** Section 26–3–302(a) provides that "[a]ll intangible personal property in this state shall be exempt from all ad valorem tax levies of counties, cities, and school districts in the state." The General Assembly enacted this statute by Act 106 of 1977 to apply to assessments occurring after January 1, 1976.

**3.** Charter received permission to hold its challenges to the assessment of intangible personal property in abeyance until the Commission decided Comcast's petition for review.

and good will, to the Tax Division, and it was not assessed. Starting with the tax year, 2005, and continuing for all succeeding years, the annual report form required of cable television companies has requested information on the value of intangible personal property; and the Tax Division has included such property in the total assessed valuation. The Tax Division made this change because it concluded that its pre–2005 treatment of intangible personal property was contrary to law.

From the inception of the 2005 assessment process throughout this review proceeding, the Tax Division has consistently and repeatedly taken the position that it believed the pre–2005 treatment of intangible personal property was incorrect and that applicable state law required the assessment of intangible personal property.

In the motion to strike, the Commission argues that the "dicta finding in the unrelated Docket No. 06–097–TD was made without a factual record to support its conclusion, and is not appropriate for judicial notice."

■ We deny the motion to strike. Charter asserted in its consolidated petition for review that the Tax Division had altered its course in 2005 to assess intangible personal property of cable companies. The Tax Division raised no objection to those comments and did not directly deny them. Both parties referenced Order No. 13, and the Commission's present complaint rings hollow when one considers that the Tax Division relied on that very order to argue that Charter was bound by its outcome. Moreover, the Commission itself took note of the order and found that it was bound by its ruling. The Commission's orders are matters of public record. Ark.Code Ann. § 23–2–420 (Repl.2002). We take judicial notice of public records

that are required to be kept. *See Brown v. State*, 375 Ark. 499, 292 S.W.3d 288 (2009); *McKinley v. Ark. Dep't of Human Servs.*, 311 Ark. 382, 844 S.W.2d 366 (1993). Consequently, we may take judicial notice of orders rendered by the Commission.

### Assessment of Intangible Personal Property

■ The issue on appeal is whether the intangible personal property of a cable-television company is subject to ad-valorem taxation. Charter argues that, as a matter of statutory construction, section 26–26–1606(b) that provides for the assessment of intangible personal property does not apply to cable-television companies.

■ This court has held that it is not within the province of the courts of this state to assess property, but only to review those assessments. *St. Louis–San Francisco Ry. Co. v. Ark. Pub. Serv. Comm'n*, 227 Ark. 1066, 304 S.W.2d 297 (1957). The burden is on the person or entity protesting the assessment to show that the assessment is manifestly excessive, clearly erroneous, or confiscatory. *Ozark Gas, supra* (citing *Tuthill v. Ark. Cnty. Equalization Bd.*, 303 Ark. 387, 797 S.W.2d 439 (1990)).

■ The question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides de novo. *Broussard v. St. Edward Mercy Health Sys., Inc.*, 2012 Ark. 14, 386 S.W.3d 385. The basic rule of statutory construction to which all interpretive guides must yield is to give effect to the intent of the General Assembly. *Ark. Tobacco Control Bd. v. Santa Fe Natural Tobacco Co.*, 360 Ark. 32, 199 S.W.3d 656 (2004). In ascertaining legislative intent, we look to the statutory language, subject matter, object to be accomplished,

purpose to be served, remedy provided, legislative history, and other appropriate matters. *Henry v. Cont'l Cas. Co.*, 2011 Ark. 224, 381 S.W.3d 802.

Starting at the beginning, the Commission's assessment authority traces back to Act 129 of 1927.[4] This act contained thirty-eight sections, identifying the businesses subject to its assessment authority and encompassing the procedures and methods of valuation. Section 12(b) of the act provided,

⌊₈(b) To have the exclusive power of original assessment of the property, both real and personal, used in the operating of carrier pipe line, railroad, street railroad, express, sleeping car and inter-county bus line companies, and all telegraph, telephone, electric power, heating, gas, water, water transportation, toll bridge or ferry, interurban and other similar companies, associations or corporations commonly known as utilities doing business or owning property in the State.

The General Assembly amended section 12(b) with the passage of Act 175 of 1975 to include companies providing cable-television services. Section 12(b) is presently codified at section 26–24–103 and includes cable-television companies in this list. The remaining provisions of Act 175 are now found at sections 26–26–1801 to –1803. Section 26–26–1801 defines "cable television system" as

any facility that, in whole or in part, receives, directly or indirectly, over the air and amplifies, or otherwise modifies, the signals transmitting programs broadcast by one (1) or more television or radio stations and distributes the signals by wire or cable to subscribing

members of the public who pay for the service.

Section 26–26–1802 states that the Commission "shall have no jurisdiction over or duties as regards to cable-television systems other than the duty to make original assessments of the property incorporated or used by those systems[.]" Section 26–26–1803 permits the Tax Division to "adopt such rules and regulations as are necessary in order to make original assessments of all property, both real and personal, used by television systems in this state."

The question here is whether section 26–26–1606(b) applies to cable-television companies. This statute, derived from section 17 of Act 129, presently reads as follows:

(b) The division shall ascertain the value of all property, tangible and intangible, including good will, easements, and franchises, except the right to be a corporation, it being the purpose of this *subchapter* to include in the valuation every element that adds value to the property.

Charter emphasizes the word "subchapter" to argue that the statute does not apply to cable‑television₉ companies because cable-television companies are not among the entities defined in section[.]26–26–1601 of the same subchapter. Charter contends that the provisions of Act 175 of 1975 pertaining to cable companies are codified in another subchapter, sections 26–26–1801 to –1803, signaling that the assessment of a cable-television company's property is subject to different treatment. It then argues that it is entitled to benefit from the tax exemption regarding intangible personal property found in section 26–3–302 because Subchapter 18 does not expressly provide for the assessment of intangible personal property. In response, the Commission asserts that the word

---

4. Initially, the authority was granted to the Arkansas Tax Commission, which was abolished by Act 12 of 1933. The Commission and its Tax Division assumed the responsibility by Act 245 of 1959 and Act 129 of 1961.

"subchapter" was inserted by the Arkansas Code Revision Commission in error because section 17 of Act 129 of 1927 used the word "act," meaning that its scope extends to all entities it is required to assess under section 26–24–103, which includes cable-television companies. The Commission also contends that the exemption found in section 26–3–302 does not apply to businesses under its assessment authority, as held by this court in *Ozark Gas, supra.*

■ The Commission's interpretation comports with legislative intent. Act 129 of 1927 was a unitary, comprehensive measure establishing centralized ad valorem tax assessment for certain businesses within the state. As enacted, its provisions applied to all business entities listed in section 12(b). Act 175 of 1975 amended section 12(b) to bring cable-television companies within the purview of Act 129. The result of an amendment to an act is to change the original act to make it read in the same manner it would have read and to give it the same effect it would have had if it had been originally enacted as amended. *Henderson v. Dearing,* 89 Ark. 598, 117 S.W. 1066 (1909). Thus, when Act 129 was amended to include cable-television companies, such companies became subject to all the provisions of the act, including section 17, which is presently codified as section 26–26–1606.

As correctly noted by the Commission, section 17 of Act 129 used the word "act" to denote the reach of its application, not the word "subchapter" now found in section 26–26–1606. Section 17 stated,

The returns of the persons, firms, companies, co-partnerships, associations and corporations whose assessment is provided for by the *Act* shall not be held to be conclusive as to the value of the property so returned, but the Commission may make such assessment of said property as it may deem just and equitable.

The Commission shall ascertain the value of all property, tangible and intangible, including good will, easements and franchises, except the right to be a corporation; it being the purpose of this *Act* to include in the valuation every element that adds value to the property.

When the Acts of Arkansas were compiled into the Arkansas Statutes Annotated, the present-day section 26–26–1606 was found at Arkansas Statutes Annotated section 84–605 (Repl.1980). There, the word "act" was used, but next to that word the compiler placed in brackets "§§ 84–601–84–613." However, the compiler's notes stated that, in addition to those sections, "this act" included, among others, "§§ 84–103–84–106." This would include the provisions of Act 175 of 1975, which were found at section 84–103(b) (Repl.1980) (currently section 26–24–103); section 84–103.1 (Repl. 1980) (currently section 26–26–1803); section 84–103.2 (Repl.1980) (currently section 26–26–1801); and section 84–103.3 (Repl. 1980) (currently section 26–26–1802).

The Commission is also correct to point out that the Arkansas Code Revision Commission substituted the word "subchapter" for the word "act" in section 26–26–1606 when our statutes were codified in 1987. *See* Ark.Code Ann. § 26–26–1606 (1987). However, to the extent that this word-change has the effect of altering the meaning of the statute, the Code Revision Commission is not authorized to change the substance or meaning of any provision of the Arkansas Code or any act of the General Assembly. Ark.Code Ann. § 1–2–303(d)(1) (Repl.2008); *Harrell v. State,* 2012 Ark. 421, 2012 WL 5462868; *Porter v. Ark. Dep't of Health & Human Servs.,* 374 Ark. 177, 286 S.W.3d 686 (2008). *See also Cox v. City of Caddo Valley,* 305 Ark. 155, 806 S.W.2d 6 (1991) (holding that, although

the language of the statute was clear and unambiguous, the language of the act was controlling where the Code Revision Commission omitted a word that changed the meaning of the statute). We also attach no significance to the fact that the Code Revision Commission placed the statutes pertaining to cable-television companies in a separate subchapter during the codification process. Arkansas Code Annotated section 1–2–115(a) (Repl.2008) provides, "The classification and organization of the titles, subtitles, chapters, subchapters, sections, subsections, and subdivisions of the Code, and any headings thereto, are made for the purpose of convenient reference and orderly arrangement, *and no implication, inference, or presumption of legislative construction shall be drawn therefrom.*" (Emphasis added.)

In sum, by enacting Act 175, the General Assembly intended section 17 of Act 129, now section 26–26–1606(b), to apply to cable-television companies. Because the specific provisions of section 26–26–1606(b) require the assessment of a cable-television company's intangible personal property, the general provision exempting the taxation of intangible personal property found in section 24–3–302 does not apply, as we held in *Ozark Gas, supra.* Therefore, the Commission did not err by assessing the value of Charter's intangible personal property.

### *Failure to Adopt Rules*

 Charter argues that the Tax Division violated section 26–26–1803 by failing to adopt rules for the taxation of a cable-television company's intangible property. In addition, it argues that, to the extent that the Tax Division attempts to use the methods for valuation contained in Subchapter 16, the Tax Division still did not follow the rulemaking process set out in section 12 of the Commission's Rules of Practice and Procedure. Charter asserts that the Tax Division's failures on these two counts renders the assessment of its intangible property illegal because there was no notice of the change given to taxpayers. The record gives no indication that this precise issue was raised before the Commission. To the extent that it was raised in circuit court, matters must first be raised in the proceedings before the Commission in order to be asserted on review of the Commission's decision. *See St. Louis–San Francisco Ry., supra.* Therefore, we are precluded from addressing this issue.

Affirmed.