Cite as 2026 Ark. App. 100

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-24-444

| | |
|---|---|
| JUDD WALKER<br><br>APPELLANT<br><br>V.<br><br>JARED COLEMAN, TYLER PIERCE,<br>TOM JONES, AND MIKE KELLEY<br>APPELLEES | **Opinion Delivered** February 18, 2026<br><br>APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>SIXTEENTH DIVISION<br>[NO. 60CV-22-7190]<br><br>HONORABLE MORGAN E. WELCH,<br>JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

The Pulaski County Circuit Court dismissed Judd Walker's (Walker's) complaint for (1) failing to join indispensable parties under Arkansas Rule of Civil Procedure 12(b)(7) and (2) failing to state a claim upon which relief can be granted under Arkansas Rule of Civil Procedure 12(b)(6). The circuit court also found that the claims of unjust enrichment and promissory estoppel were outside the protection of the savings clause and thus were outside the statute of limitations. On appeal, Walker argues that the circuit court erred when it dismissed his complaint because (1) Bluefin Development, LLC; Ridgebury Development, LLC; Jcampbell615, LLC; Illenium, LLC; and MK14, LLC (collectively, "the entities"), were not indispensable parties; (2) the claims for unjust enrichment and promissory estoppel were saved by Arkansas Code Annotated section 16-56-105; and (3) Walker had stated a claim upon which relief can be granted. We affirm.

## I. *Background*

According to Walker's complaint, Walker and the appellees agreed to form a partnership. In early 2018, Tom Jones and Mike Kelley joined together to advance the interest of Gas Express, LLC, one of the largest multistate Circle K franchises in the United States, into other states, including Arkansas. To make this work, Jones and Kelley brought in Walker and Blake Smith to form a real estate development venture. Walker was responsible for identifying potential development sites, and it was determined that his real estate business acumen would be essential to the project. Smith was mainly responsible for raising the capital needed for the projects.

On March 13, 2018, Jones met with Smith and Walker and expressed his desire to form a partnership in order to advance the venture. For the next year, Walker devoted a large portion of his time to this venture. Walker alleges that his involvement was significantly more than any other Arkansas-based participant during this period. Smith left the venture and was replaced by Tyler Pierce who, with the approval of the other parties, brought on Jared Coleman. Throughout 2018, the parties referred to each other as partners. Walker acknowledges that the lease agreements with Gas Express were signed by Bluefin Development, LLC, around September.

Walker alleges that Jones informed the others that they needed to create a holding company. Walker concedes that the parties agreed to form an LLC for the purpose of formalizing their oral partnership agreement. Coleman created, signed, and filed the necessary documentation to create Bluefin Development, LLC. On September 13, Jones sent an email informing the parties to "go ahead and execute the Bluefin Operating

Agreement." All the parties were involved in the creation of the Bluefin Development website and were identified as partners on the website. Additionally, all parties approved and received business cards as partners in Bluefin Development, LLC, and the parties were working to receive group health insurance through Bluefin Development, LLC.

In August 2018, Coleman sent the parties the proposed operating agreement. In the operating agreement, the "members" were not listed individually but as the LLCs each individual member had created, including JB Walker, LLC. JB Walker, LLC's, membership interest was set at 13.33 percent. Walker found this unacceptable and refused to sign, noting his interest in continuing to negotiate considering the work he had already completed. Walker alleges that following his refusal to sign the agreement, the remaining members conspired to exclude Walker from the partnership, divvied up his ownership interest among the remaining members, and enriched themselves at Walker's expense. Specifically, Walker alleges that without informing him, the remaining members executed a new operating agreement with an effective date of November 19, 2018, that did not include Walker.

Despite executing the new operating agreement, the appellees continued to refer to Walker as a partner of Bluefin Development. Unbeknownst to Walker, he was being referred to as "Principal Broker" rather than "Partner" to outside businesses. Twice in December, Walker asked to meet with Coleman to work out the percentages and finalize an operating agreement. At no point was Walker informed of the operating agreement that was already executed. Walker again requested to meet with Coleman to discuss an operating agreement on January 2, 2019, at which point Coleman informed Walker that the other partners had already executed an agreement that did not include Walker.

Walker did not take legal action immediately upon discovering the alleged fraud. On February 15, Coleman and Pierce sued Walker, seeking declaratory relief; Kelley and Jones joined the suit on August 9. On January 23, 2020, Walker filed a counterclaim alleging ten claims: (1) breach of contract; (2) conversion; (3) breach of fiduciary obligations; (4) fraud; (5) accounting; (6) declaratory judgment; (7) charging order; (8) theft by deception; (9) civil conspiracy; and (10) punitive damages.[1] Walker's counterclaim was only against the parties individually and did not include any of the associated LLCs. On July 19, 2022, all parties dismissed their claims without prejudice.

On October 19, 2022, Walker filed suit against the individual appellees but did not include the LLCs. In his complaint, Walker alleged the initial ten claims from his counterclaim and two additional claims: unjust enrichment and promissory estoppel. After a convoluted procedural history, the case was in front of the Pulaski County Circuit Court, where appellees moved to dismiss. After a hearing on the motion, the circuit court granted the appellees' motion, finding that Walker had failed to join indispensable parties and that it was not feasible for the court to join them because the statute of limitations had already elapsed. This appeal followed.

II.  *Requested Relief*

Both in the circuit court and again on appeal, Walker argues that the entities are not indispensable because he has never sought damages against the entities. Walker further argues on appeal that "[his] Complaint did not seek any relief against the entities." This

---

[1]The complaint from the initial action and the associated countercomplaint are not part of the record before this court.

4

argument, however, is belied by the record. In his prayer for relief, Walker explicitly requests the following:

> WHEREFORE, the Plaintiff prays for judgment against the Defendants for all damages allowed by law including, but not limited to compensatory damages in an amount to be determined by a jury empaneled to try the issues of fact in this case, in excess of the minimum amount required for federal court diversity jurisdiction; for punitive damages against the Defendants for the intentional torts described herein in an amount likewise to be determined by a jury empaneled to try the issues of fact in this case; for an accounting for all sums coming into the possession or under the control of the defendant from March 2018 to the date of trial *resulting from the business of the partnership described herein and in Bluefin Development, LLC, and in all other entities created by Defendants in furtherance of the partnership entered into by and between Judd Walker and the Defendants; and for a charging order against the assets of Bluefin Development, LLC, and all other entities created by Defendants in furtherance of the partnership entered into by and between Judd Walker and the Defendants in order to secure that the Plaintiff's damages will be paid from the assets of those entities*; for his cost and fees herein; and for such other and further relief to which he may prove himself entitled.

(Emphasis added.) Moreover, the entities and the formation of the entities form the backbone of nearly every claim in his complaint. For example:

> 46. . . . Defendants promised Judd Walker that he would be a partner in the partnership that resulted in Bluefin Development, LLC and all related entities formed for the purpose of doing real estate for Gas Express stores.
> . . . .

> 58. The Defendants took or exercised dominion or control over Judd Walker's interest in Bluefin Development, LLC, and all other entities created by Defendants in furtherance of the partnership entered into by and between Judd Walker and the Defendants . . . .

> . . . .

> 64. The acts and conduct of the Defendants described in the preceding paragraphs of this Complaint, including but without limitation the act of forming Bluefin Development, LLC, without Judd Walker as an owner of a portion of such limited liability company . . . .

> . . . .

67. As a partner in the partnership described herein and as the beneficial owner of an interest in Bluefin Development, LLC, and all other entities created by Defendants in furtherance of the partnership entered into by and between Judd Walker and the Defendants, the Plaintiff is entitled to an accounting from the Defendants of all income, expenses, profits, expenses, and any other financial transactions engaged in by Bluefin Development, LLC, the defendants, and all other entities created by Defendants in furtherance of developing Gas Express sites and stores. . . .

. . . .

69. A judicial issue exists between these parties involving the ownership of Bluefin Development, LLC, any monetary interests Defendants have from developing Gas Express sites 23 or stores, and all other entities created by Defendants in furtherance of the partnership entered into by and between Judd Walker and the Defendants. The Plaintiff is entitled to a declaration from this Court, pursuant to Ark. Code Ann. § 16-11-101, *et seq.*, and Rule 57, Ark. Rules Civ. Pro., to establish that Bluefin Development, LLC, and all other entities created by Defendants in furtherance of the partnership entered into by and between Judd Walker and the Defendants, are and, at all material times, were owned 20% by Judd Walker.

. . . .

84. The acts and conduct of the Defendants described herein constitute a breach of fiduciary obligations owed to the Plaintiff, the conversion of the Plaintiff's interest in the partnership alleged herein and in Bluefin Development, LLC, and all other entities created by Defendants in furtherance of the partnership entered into by and between Judd Walker and the Defendants, and a fraud perpetrated upon the Plaintiff. . . .

The dissent erroneously argues that Walker has "twice disclaimed any intention of seeking relief from [the entities]." As explained, the record does not show that Walker was abandoning the relief he sought against the entities; rather, it shows that Walker was arguing that he *never* had any claims against the entities. Walker—and the dissent—are mistaken. Furthermore, it is not the appellees' burden to add the necessary parties for Walker.

6

### III. *Indispensable Parties*

Walker's first point on appeal is dispositive; accordingly, we do not address his remaining points. Walker argues that the circuit court erred when it determined that the entities were indispensable parties under Arkansas Rule of Civil Procedure 19(a). Rule 19(a) states:

> A person . . . shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter, impair or impede his ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest. If he has not been joined, the court shall order that he be made a party.

Our supreme court has held that the purpose underlying this rule is to ensure that "all persons . . . who will be necessarily and materially affected by its result" shall "be made parties to an action." *Nolan v. 2600 Holdings, LLC*, 2024 Ark. 50, at 5–6, 686 S.W.3d 499, 502–03. The need to join an indispensable party cannot be waived. What is more, the circuit court or appellate court must raise the issue sua sponte if necessary. *Vibo Corp. v. State ex rel. McDaniel*, 2011 Ark. 124, 380 S.W.3d 411; *Morgan v. Turner*, 2010 Ark. 245, 368 S.W.3d 888.

This court has previously found an individual to be indispensable when the damages sought were to come out of funds owned by that individual, even when the individual himself was not a party to the actions. *See Swindle v. Benton Cnty. Prosecuting Atty's Off.*, 2023 Ark. App. 98, 661 S.W.3d 682. In *Swindle*, an attorney sought to obtain an attorney's lien on restitution that had been awarded in a criminal case. The restitution belonged to Mr. Saucedo, who had signed a contract that Swindle would represent him in any claim

7

that arose from a car crash incident. The car crash resulted in criminal charges against the other party, which resulted in the award of the restitution for Saucedo. This court held that Saucedo was an indispensable party under Rule 12(b)(7):

> The plain language of Rule 19 demonstrates Mr. Saucedo is a necessary party to this case because the restitution funds Swindle claims he has an attorney's lien on *belong to Mr. Saucedo*. If those funds are used to pay Swindle pursuant to the lien, Mr. Saucedo's "ability to protect that interest" is impaired, and the appellees are "subject to a substantial risk of incurring . . . inconsistent obligations by reason of his claimed interest." Ark. R. Civ. P. 19. Swindle's failure to join Mr. Saucedo as a necessary party warranted dismissal under Ark. R. Civ. P. 12(b)(7).

*Id.* at 7, 661 S.W.3d at 687 (emphasis added).

The dissent's reliance on *Williams v. Sears, Robuck & Co.*, 355 Ark. 668, 144 S.W.3d 245 (2004), is misplaced. In *Williams*, our supreme court held that the third party was not a necessary party because the case before it was a declaratory judgment of obligations under a contract. *Id.* at 672, 144 S.W.3d at 248. The court specifically noted that the action before it was not an ordinary cause of action, such as "an action to recover on the charge account," which could change its analysis. *Id.* at 673, 144 S.W.3d at 248. In the instant case, Walker's case is an ordinary cause of action and does seek to recover damages. Accordingly, *Williams* is easily distinguishable from the instant case.

Further, Arkansas Code Annotated section 4-38-304 states that

A debt, obligation, or other liability of a limited liability company is solely the debt, obligation, or other liability of the company. A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or other liability of the company solely by reason of being or acting as a member or manager. This subsection applies regardless of the dissolution of the company.

8

Ark. Code Ann. § 4–38–304(a) (Supp. 2025). The entities are all limited liability companies.[2] Whether Bluefin was created to formalize the oral agreement to form a partnership is irrelevant. Accordingly, any damages that Walker seeks from Bluefin Development, LLC, and the other LLCs are "solely the . . . obligation . . . of the company." *Id.* Therefore, the damages sought by Walker are obligations of the entities and they are indispensable parties.

IV.  *Feasibility of Adding the Entities*

Generally, when a plaintiff fails to join an indispensable party, the court should order that the indispensable party be joined. *Morgan*, 2010 Ark. 245, at 14, 368 S.W.3d at 897. "Only when the court determines that joinder is not feasible should the court consider dismissing the action." *Id.* We find that the circuit court did not err in determining that joinder was not feasible in the instant case. Pursuant to Ark. Code Ann. § 16–56–126 (Repl. 2005), Walker was able to file a new action within one year of the entry of the order of nonsuit without regard to the statute of limitations. Our supreme court has held that this right extends to counterclaims. *Linn v. NationsBank*, 341 Ark. 57, 65, 14 S.W.3d 500, 505 (2000) ("Similarly, we hold that under [Ark. R. Civ. P.] 41, a defendant may once voluntarily dismiss his or her compulsory counterclaim without prejudice to refile it within one year."). The savings clause in Rule 41, however, does *not* extend to compulsory

---

[2]The dissent claims that it is not clear where the LLCs were organized. The Arkansas Secretary of State is required to keep business-entity records. Ark. Code Ann. § 4-26-1201(a)(4) (Repl. 2016). We take judicial notice that the information is required to be kept. *See Falcon Cable Media LP v. Ark. Pub. Serv. Comm'n*, 2012 Ark. 463, at 6, 425 S.W.3d 704, 708. A search of the publicly available information on the Arkansas Secretary of State website shows that, at the very least, Bluefin Development, LLC; Jcampbell615, LLC; and Illenium, LLC, are all organized in Arkansas. https://www.ark.org/corp-search/index.php (last visited Feb. 10, 2026).

counterclaims that parties should have asserted in the prior suit; only those compulsory counterclaims that were asserted will be protected by Rule 41. *Id.*

Rule 13(a) of the Arkansas Rules of Civil Procedure provides that

[a] pleading shall state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

(Emphasis added.) The purpose of this rule is to require parties to present all existing claims simultaneously to the court or be forever barred, thus preventing a multiplicity of suits arising from one set of circumstances. *Est. of Goston v. Ford Motor Co.*, 320 Ark. 699, 898 S.W.2d 471 (1995); *Bankston v. McKenzie*, 288 Ark. 65, 702 S.W.2d 14 (1986).

Walker does not allege that he included claims against the entities in his initial counterclaim. Therefore, it is only feasible to join these parties if the statute of limitations has not already run. The statute of limitations is, at most, three years for Walker's claims. Ark. Code Ann. § 16-56-105 (Repl. 2005). According to Walker, he was informed of the alleged fraud on January 2, 2019. Thus, the statute of limitations expired on Walker's claims on January 2, 2022. The instant case was filed on October 19, 2022, well after the statute

of limitations had run. Accordingly, it was not feasible to join the entities because the statute of limitations had run already, and section 16-56-105 did not "save" those claims.[3]

V. *Conclusion*

For the foregoing reasons, we affirm the circuit court's dismissal of the case for failure to join indispensable parties as required by Arkansas Rule of Civil Procedure 12(b)(7).

Affirmed.

TUCKER, WOOD, HIXSON, and MURPHY, JJ., agree.

HARRISON, J., dissents.

**BRANDON J. HARRISON, Judge, dissenting**. The majority conflates Rule 12(b)(6) and Rule 19 analyses and gives Judd Walker the short end of both sticks by dismissing his timely damages claims against the people he sued—based on a merits defense that could be raised by entities (limited liability companies) had he sued them, though he did not. Not only did he not sue the LLCs, he has twice disclaimed any intention of seeking relief from them. That doesn't matter to the majority, but it should. Under the plain language of Arkansas Rule of Civil Procedure 19, which we must read like a statute and strictly abide, *Nolan v. 2600 Holdings, LLC*, 2024 Ark. 50, 686 S.W.3d 499, dismissal for failure to join a necessary party must follow a two-step equitable analysis. Had the correct analysis been done on this record, then it could only come out the other way: reverse the dismissal and reinstate the operative complaint. By affirming, the majority undermines a foundational part of the Arkansas Rules of Civil Procedure as well. I therefore dissent.

---

[3]The dissent argues that we should require that this defense be raised below. We note that appellees explicitly argued that these claims are time-barred and not saved under the Arkansas savings statute in paragraph 11 of their motion to dismiss filed in the circuit court.

The majority's Rule 19 holding depends on two core legal assumptions, ones unmoored from the law and practical considerations. First, it assumes that in a suit for unliquidated damages a company the plaintiff chose not to sue is a "necessary party" under Rule 19(a) if the named defendant can, solely on pleaded facts, persuade the circuit court that an unsued company is at best a more appropriate defendant. Second, the majority assumes that joining the company becomes "infeasible" under Rule 19(b)—and requires dismissing the timely claims against everyone who was properly named and served—when the limitations period to sue the company runs. I find no support for either assumption.

★ ★ ★

Walker alleged defendant Tom Jones enlisted him and others (including all the named defendants) in a partnership to pursue an opportunity to develop and lease convenience store sites to Gas Express, a major franchisor. Walker's role was to identify the sites. For more than a year, he did so—without pay and for the partnership's benefit. The parties' efforts met success. Jones had negotiated the material terms of a lucrative franchise agreement with Gas Express by 25 August 2018. That was done *before* the partners had organized any entity to cash Gas Express's checks.[1]

Jones eventually suggested they organize an LLC; Walker himself picked the name Bluefin Development, LLC (Bluefin). Walker, whose role out of office kept him replacing shoe leather at the cobbler, was then kept in the dark on further discussions about ownership percentages until moments before a scheduled meeting with a potential investor, Aaron

---

[1]Although I would not address the Rule 12(b)(6) point where the circuit court has not done so, I find that timing point telling.

12

Peeples. Defendant Jared Coleman had organized Bluefin the previous day. He presented Walker with this signature page, excerpted in the complaint:

MEMBERS:

_____
Ridgebury Development, LLC
Thomas Jones, President

_____
1510 Rock Holdings, LLC
Aaron Peeples, Manager

_____
Jcampbell615, LLC
Tyler Pierce, Manager

_____
JB Walker, LLC
Judd Walker, Manager

_____
dilenium, LLC
Jared Coleman, Manager

_____
MK14, LLC
Mike Kelly, Manager

Walker declined to sign. For one thing, according to an attached membership schedule, a /s/ would have agreed to give Peeples a twenty percent interest in Bluefin before he had even agreed to invest. Indeed, Peeples never invested; apparently he didn't sign the agreement either. Without telling Walker, the defendants reallocated the membership interests that had been allocated to his and Peeples's LLCs in that draft to their own LLCs instead, effective 19 November 2018. Walker excerpted that signature page too:

13

**MANAGERS:**

_____
Thomas Jones, Manager

_____
Tyler Pierce, Manager

**MEMBERS:**

_____
Ridgebury Development, LLC
Thomas Jones, President

_____
Jcampbell615, LLC
Tyler Pierce, Manager

_____
dllenium Holdings, LLC
Jared Coleman, Manager

_____
MK14, LLC
Mike Kelly, Manager

The defendants continued to refer to Walker as a partner, and let him work without pay on their behalf, for weeks afterward. Catching a pattern here (as pleaded and presumed true)?

With the screenshot above, the reader knows everything we know about the supposedly "necessary" LLCs. And already the facts weigh against dismissing under Rule 19. Even if the companies are legally separate from the defendants, they appear so closely connected that the defendants themselves could prevent any harm to their interests. *See* Ark. R. Civ. P. 19(b). For example, only the defendants (or LLCs they controlled) were

14

alleged to own any interest in the LLCs. Second, the LLCs' decisions were made by the defendants themselves, who are shown above to be the LLCs' managers.[2] We can assume the defendants made decisions for the LLCs with respect to Bluefin in particular: they signed its operating agreement as the LLCs' managers.

Add that together and the Rule 19 argument was simply unpersuasive. No; it's worse. Walker has been unjustly deprived of a day in court much too soon. Why? Because the named defendants were, to a man, the legal representatives and decisionmakers for the LLCs whose absence they complained of. If it had presented a risk of inconsistent obligations, the defendants could have brought the LLCs in with a third-party complaint to determine all obligations at once. Ark. R. Civ. P. 14(a). They could have served that complaint on themselves, no less! Ark. R. Civ. P. 4(f)(6) (allowing service on LLC manager). Or they could have donned their manager hats and caused the LLCs to intervene—as the nonparty LLC in *Nolan* tried desperately to do, in circuit court and on appeal, when litigation between strangers *actually* threatened to prejudice its interests. *Nolan*, 2024 Ark. 50, at 10, 686 S.W.3d at 505 (Webb, J., concurring) (detailing nonparty's attempts to join and otherwise participate under Rules 19(a) and 24(a) in suit to cancel and claim its marijuana cultivation license).

---

[2]Or, in Jones's case, "President." Typically, in a manager–managed LLC, the manager has sole decision-making authority. Ark. Code Ann. § 4–38–407(c)(1) ("Except as expressly provided in this chapter, any matter relating to the activities and affairs of the company is decided exclusively by the manager[.]").

15

There is more the majority can't and doesn't know now, so it guesses while essentially advocating on the allocation of liability between the LLCs and the defendants without knowing:

1. When were the member LLCs organized?

2. Under what states' laws were they organized?

3. What are the terms of their operating agreements?

Why is number 2 important, for example? Well, if the member LLCs were organized in Arkansas, they were on notice of everything the defendants knew without being made parties. At the time, our statutes provided that

> [n]otice to any manager of any matter relating to the business or affairs of the limited liability company, and the knowledge of the manager acting in the particular matter, acquired while a manager or known at the time of becoming a manager, . . . operate as notice to or knowledge of the [LLC.]

Ark. Code Ann. § 4–32–303(b)(1) (repealed). If the LLCs were not organized in Arkansas, then the liability-limiting statute the majority relies on, Ark. Code Ann. § 4–38–304(a), does not apply. Ark. Code Ann. § 4–38–901(a)(2) ("The law of the jurisdiction of formation of a foreign limited liability company governs . . . the liability of a member as member and a manager as manager for a debt, obligation, or other liability of the company[.]") Further, virtually every aspect of the relationship between an LLC and its members, and every statutory rule that would apply by default, can be overridden in the operating agreement. Ark. Code Ann. § 4–38–105(a) & (b). We have no operating agreement for any LLC, not even Bluefin. More is needed.

All these unknowns should be a barrier to affirming. Under Rule 19(b), dismissal is a last resort that must follow a determination "whether in equity and good conscience the

16

action should proceed among the parties before it" after considering several factors that required knowing more than this.[3] The exception—"whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder," Ark. R. Civ. P. 19(b)(4)— obviously didn't favor dismissing here.

The factual and legal gist of Walker's robust-and-detailed complaint is that the defendants broke their partnership agreement with him, and fiduciary duties as partners, by appropriating an opportunity that belonged to the partnership and pursuing it without him instead. Simple. Straightforward. Supported by law.

Under the Revised Uniform Partnership Act,[4] a partner's fiduciary duties expressly include:

> (1) to account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, **including the appropriation of a partnership opportunity**.

Ark. Code Ann. § 4-46-404(b)(1) (emphasis added). Without citing that statute, Walker's plea for relief evoked the right it describes: to subject any fruits of the defendants' breach of

---

[3]For that reason, the advisory committee note accompanying the federal model for our Rule 19 recommends deferring this decision:

> [T]he relationship of an absent person to the action, and the practical effects of an adjudication upon him and others, may not be sufficiently revealed at the pleading stage; in such a case it would be appropriate to defer decision until the action was further advanced. *Cf.* Rule 12(d).

Fed. R. Civ. P. 19 (1966 Advisory Committee Note).

[4]Which the defendants relied on in circuit court for a defense so flimsy the majority rightly declines (as I do) even to describe it.

partnership duties—whether reaped directly or through other entities—to his partnership rights.

For reasons we don't know (and Walker didn't have to give when filing the operative complaint), he chose to sue only the partners.  Rule 19 doesn't force him to make a different choice.  Out of respect for the careful equitable tradition it embodies, I quote it in full:

> (a) *Persons to Be Joined if Feasible.*  A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or, (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter, impair or impede his ability to protect that interest, or, (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.  If he has not been joined, the court shall order that he be made a party.  If he should join as a plaintiff, but refuses to do so, he may be made a defendant; or, in a proper case, an involuntary plaintiff.

> (b) *Determination by Court Whenever Joinder Not Feasible.*  If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.  The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Ark. R. Civ. P. 19.

The absence of a necessary party is irrelevant to a dismissal analysis unless it "cannot be made a party" in the narrow sense used in Rule 19(b): it cannot be served with process and is not subject to the court's jurisdiction.  *St. Vincent Infirmary Med. Ctr. v. Shelton*, 2013 Ark. 38, at 10, 425 S.W.3d 761, 767 (addressing only whether nonparty was a necessary party under Rule 19(a) because "there is no assertion in this case that [it] was not subject to

18

service of process."). That's because if an absent but necessary party can be joined, Rule 19(a) requires the court to cure the defect by ordering the party joined, not dismissing: "If he has not been joined, the court shall order that he be made a party." The circuit court did not do that. This court compounds that error. There is in fact a separate rule for joining parties no one sued, Ark. R. Civ. P. 21 ("Parties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action and upon such terms as are just."). The majority's statement that "it was not the [defendants'] burden to add the necessary parties for Walker" is a good rhetorical point but also beside the determinative legal point: it was the circuit court's burden to do that—before it dismissed, at least. That's what Rule 19 says; and that's whose order Walker appealed. The defendants identified no barrier to *joining* the LLCs in the procedural sense. (That is, draft, print, and serve a pleading that includes them). They argued that Walker could get no relief from the LLCs, if Rule 19 required him to join them, because those claims would be dismissed as untimely. The majority mistakenly adopts that theory of "infeasibility" of joinder here, citing no precedent for its decision. The logic and the precedent run the other way. (Run Forrest, run!)

The relationship of baby to bathwater that theory of infeasibility implies (meaning no Bluefin, no anyone) is unsustainable. For one thing, limitations is an affirmative defense; a waivable one. Yet the LLCs that have not yet been joined have obviously not raised that defense. (As we know, the defendants themselves would decide whether the LLCs raised it.) But even if the LLCs raised a limitations defense and won—even at the threshold of a lawsuit—that circumstance would not be inconsistent with being a party. You'd have to

19

be a party to assert a defense at all. Sometimes, that defense wins off the jump. *Martin v. Equitable Life Assur. Soc. of the U.S.*, 344 Ark. 177, 40 S.W.3d 733 (2001). But unlike a traditional limitations defense—which defendants must assert and either win or lose, one at a time—this misconstruction of Rule 19 would allow them to win dismissal of *all* claims by persuading a court that there is anyone the plaintiff *should have sued* against whom limitations has run. (On the pleadings, no less.) When—before limitations run or after—are defendants likely to raise it? This inverts the equitable principles behind the rule.

Rule 19 addresses the risk of duplicative or inconsistent obligations; not obligations a party could contend are unfair. Nearly every defending party in a lawsuit no doubt thinks being sued was unfair in some way or another. That's not the legal test of a viable case. In any event, an argument that somebody else is responsible to the plaintiff on his claims—legally, factually, or both—is a merits defense. Whether the plaintiff has sued that person or not, the Rules of Civil Procedure provide mechanisms for raising that defense on the pleadings: Rule 12(b)(6), the proof (Rule 56), and if all else fails at trial and through posttrial motions. If the jury or circuit court gets it wrong, there is a remedy by appeal. If we get it wrong too—well, sometimes we do. In that event, a party can petition the Arkansas Supreme Court for review.

But the majority is not writing on a blank slate and in the dark. This issue was settled the *opposite way* for the federal Rule 19 in *Temple v. Synthes Corp. Ltd.*, 498 U.S. 5 (1990) (per curiam). A Louisiana plaintiff sued in two courts for one injury from an allegedly defective spine implant. He sued the Pennsylvania manufacturer in federal court. He sued the Louisiana doctor and hospital in state court. The federal defendant declined to bring

them in using Fed. R. Civ. P 14, though that would not have destroyed diversity, *Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996), and would have prevented any prejudice. The defendant preferred them absent (ring any bells?). If the Louisiana defendants were necessary parties under Rule 19(a), they were indispensable under Rule 19(b) because the *plaintiff* could not join them without destroying diversity. In a four-page *per curiam*, the Supreme Court of the United States granted certiorari and summarily reversed the judgment dismissing the plaintiff's claims under Federal Rule of Civil Procedure 19(b). "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Id.* at 7. It held no Rule 19 inquiry was necessary, because "[a]s potential joint tortfeasors with [the federal defendant]," the state-court defendants "were merely permissive parties"[5]

Later, the Arkansas Supreme Court cited *Temple* and settled this issue (in Walker's favor) for our Rule 19 in *Shelton*, 2013 Ark. 38, 425 S.W.3d 761. The court held that a nonparty tortfeasor was not a necessary or indispensable party under Rule 19 on facts that were more favorable than those here:

| *Shelton* | Here |
|---|---|
| The plaintiffs sued and sought relief from the nonparty nursing home for the same injury they still blamed the defendant hospital for. | Walker sued the defendants only and insists he seeks damages only from them. |
| It was legally impossible for the plaintiffs to recover from the nursing home when the Rule 19 issue was decided, because those | The LLCs *might* be dismissed with prejudice if Walker sues them. |

---

[5]*Id*. at 8. "Permissive parties," or "parties who may be joined" are described in Arkansas Rule of Civil Procedure 20(a), which is identical for our purposes to the federal one.

21

| | |
|---|---|
| claims had already been dismissed with prejudice. | |
| The nursing home's litigation decisions were not controlled by the defendant hospital. | The LLCs are controlled by the defendants themselves. |
| The defendant hospital tried to sue the nursing home under Rule 14 but couldn't. | The defendants could have sued the LLCs under Rule 14 but didn't. |

Citing *Temple*, our supreme court noted that "joint tortfeasors are not considered to be necessary or indispensable parties, as all potential tortfeasors are not required to be named as defendants in a single lawsuit." 2013 Ark. 38, at 10, 425 S.W.3d at 768. It held that inference was only stronger in a several-liability regime, where the intention is "to hold each defendant liable only for his or her share of fault[,]" which the plaintiffs would "still have the burden to prove." *Id*. at 11, 425 S.W.3d at 768. And the nursing home's absence at trial would not prevent the hospital "from presenting to the jury potential evidence of [the nursing home's] responsibility for a portion of [the resident's] injuries." *Id*. at 12, 425 S.W.3d at 768.

I cannot square those authorities—which express the universal understanding of how joinder works under Federal Rule of Civil Procedure 19 and state rules modeled on it—with the majority's decision to affirm. I cannot square that decision with Rule 19 either, because the majority does the inverse of what is directed by every relevant clause. Again, what the majority has identified is a merits defense, not a Rule 19 issue. And its citation to *Swindle v. Benton County Prosecuting Attorney's Office*, 2023 Ark. App. 98, 661 S.W.3d 682, is not persuasive. The majority misses the key procedural distinction in the facts that made *Swindle* a classic application of Rule 19. There, a plaintiff's attorney petitioned for a

declaration that the lien he had reserved in his client's civil recovery extended to a restitution order in the tortfeasor's criminal case. The circuit court dismissed under Rule 12(b)(6) because an attorney's lien doesn't attach to a criminal restitution award. It also dismissed under Rule 12(b)(7) because the client (and restitution beneficiary) was not a party.

Though the restitution award was related to the client's civil damages (and measured in dollars), the restitution order itself was a judgment. Ark. Code Ann. § 5-4-205(g)(1). The tortfeasor's liability had been fixed before the case began; only the payees—lawyer and client, or client alone—were disputed. That's an important distinction because settling incompatible claims to a thing (like a judgment) is a classic use of joinder under Rule 19;[6] and litigating the lien issue without the client presented a classic risk of imposing "double, multiple or otherwise inconsistent obligations" on the payor. Ark. R. Civ. P. 19(a). A restitution beneficiary can enforce a restitution order like a civil judgment. Ark. Code Ann. § 5-4-205(g)(2). And if he has a civil judgment too, restitution payments must be credited against it. *Id.* § 5-4-205(h)(2). If the circuit court had imposed a lien on the restitution order, the nonparty client might have refused later to credit the payor for what the lawyer took under the lien.

If anything we said in *Swindle* implied that decision would be relevant to a Rule 19 analysis of an unliquidated civil damages claim, we should distance ourselves from that unintended and unnecessary misstep. Not extend it. The Rule 12(b)(7) point was

---

[6] For example, in *Nolan*, *supra*, the plaintiff sued to cancel and claim for itself the nonparty's marijuana cultivation license.

23

surplusage in any event, because in *Swindle* we had already affirmed under Rule 12(b)(6) that the lawyer had no attorney's lien.

If there is a controlling Rule 12(b)(7) case on these facts, it requires reversing, not affirming. In *Wilman v. Sears, Roebuck & Co.*, 355 Ark. 668, 144 S.W.3d 245 (2004), the plaintiff had sought a declaratory judgment that she was not liable for credit card charges she denied making. Our supreme court held the defendant creditor's desire to adjudicate who *was* liable for the charges did not make the likely debtor (the plaintiff's daughter) indispensable under Rule 19. That analysis was limited to the relief the plaintiff sought. "Sears will not be required to relitigate who owes on the debt because that issue is not being litigated in the present action. What has never been litigated cannot be relitigated." *Id.* at 673, 144 S.W.3d at 248. Here, Walker sought damages from the defendants individually. Their liability is all that would be litigated, and the tools to defend against it or try to shift it to others were still available to the defendants under other Rules. Right now, on this thin record, nothing prevents his quest from proceeding.

I'll come at it an additional way. The majority's analysis reverses the inferences we would usually afford the pleader. In effect, it assumes that on no set of facts consistent with Walker's complaint could the LLCs prove to be anything but indispensable. But *Nolan* alone would demonstrate there is no need to speculate on the pleadings and dismiss too soon. Rule 19 "does not condition [the courts'] authority to join an indispensable party on a motion by a party" but authorizes joinder sua sponte. *Nolan*, 2024 Ark. 50, at 6, 686 S.W.3d at 503 (quoting *Vibo Corp., Inc. v. State ex rel. McDaniel*, 2011 Ark. 124, at 27, 380 S.W.3 411, 428). In *Nolan*, the court vacated a judgment entered in a nonparty's absence

24

as it reversed the denial of its motion to join. *Id.* at 8, 686 S.W.3d at 504. In *Vibo Corp.*, the court had reversed and remanded to consider joinder sua sponte on appeal. 2011 Ark. 124, at 28–29, 380 S.W.3d at 428. Even under the majority's views of what makes a nonparty "necessary" and when joinder is "infeasible," we know that if actual prejudice from the LLCs' absence materialized later, it could be remedied at any time. Simply put: The law embodies the strongest possible presumption *against* dismissing an action for damages at the pleading stage. The circuit court and today's majority opinion, however, take the opposite position on this critical point.

If the circuit court found Walker had no cognizable claim against the defendants on these facts, it should have dismissed his claims under Rule 12(b)(6). Instead, the court implied some of Walker's claims should survive such an analysis: "While the court considered excising different claims, it ultimately decided that it would not do that because the complaint is deficient enough as to failure to include necessary parties that this will just delay what will be done at a later time." In fact, the circuit court and counsel acknowledged at a motion hearing that whether Walker has a claim on these facts was an interesting issue about which they could find little authority either way. I express no view; the circuit court should decide those matters in the first instance.

I dissent because Judd Walker has, in a meaningful sense, been wrongfully denied his day in court on a viable complaint (currently presumed true) that he filed as master of his own lawsuit. To prevent this, he disclaimed—in circuit court and on appeal—the intent to recover anything *but* money from anyone *but* the defendants: "To be clear, the Complaint does not seek any relief from Bluefin Development, LLC, or the Entities, whatsoever.

25

Rather, [Walker] seeks money damages against the individual Appellees for their breach of the partnership agreement they made with him." Why the majority doesn't take him at his word and let the case play out further is unfortunate and bad precedent.

★ ★ ★

I respectfully disagree with the majority's serious misapplication of an important procedural rule and would reinstate Walker's complaint because it is too soon to know about the viability of the case, one that has been prematurely judged at the threshold.

*Castleberry Law Firm, PLLC*, by: *Kenneth P. "Casey" Castleberry*; and *Lubel Voyles LLP*, by: *Lance H. Lubel*, *pro hac vice*, for appellant.

*The Applegate Law Firm, PLLC*, by: *Kayla M. Applegate*; and *James, House, Swann & Downing, P.A.*, by: *Patrick R. James*, for appellees.